23-1251

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

JARED POLIS, in his official capacity as
Governor of the State of Colorado,

     Defendant - Appellant,

v.

ROCKY MOUNTAIN GUN OWNERS,
TATE MOSGROVE, and ADRIAN S.
PINEDA,

     Plaintiffs - Appellees.

On Appeal from the United States District Court, District of Colorado
The Honorable Phillip A. Brimmer
Chief District Judge

District Court Case No. 23-cv-01077-PAB

**GOVERNOR POLIS'S EMERGENCY MOTION TO STAY THE DISTRICT
COURT'S PRELIMINARY INJUNCTION PENDING APPEAL**

PHILIP J. WEISER
Attorney General
GRANT T. SULLIVAN*
Assistant Solicitor General
MICHAEL T. KOTLARCZYK *
Senior Assistant Attorney General
MATTHEW J. WORTHINGTON*
Assistant Attorney General

Colorado Department of Law
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: 720-508-6349
E-Mail: grant.sullivan@coag.gov;
mike.kotlarczyk@coag.gov;
matt.worthington@coag.gov
*Counsel of Record
*Attorneys for Governor Polis*

**CORPORATE DISCLOSURE STATEMENT**

Because Defendant-Appellant Jared Polis is a state government officer, no corporate disclosure statement is required under Federal Rule of Appellate Procedure 26.1.

# TABLE OF CONTENTS

BACKGROUND ........................................................................................................ 2

    A. Legal Framework for Second Amendment Challenges.................................. 2

    B. Factual and Procedural History ..................................................................... 3

    C. The Parties' Evidence and Arguments .......................................................... 4

    D. The District Court's Order ............................................................................ 5

JURISDICTION ....................................................................................................... 7

ARGUMENT............................................................................................................ 7

I.    Legal standard for a stay of the preliminary injunction pending appeal. ............. 7

II.    The Governor is likely to prevail on the merits of his appeal. ......................... 7

    A. The record does not establish that the individual Plaintiffs have standing. .. 7

    B. The Governor is likely to prevail under the *Bruen* standard. ....................... 9

        1. The district court erred by shifting the burden to the Governor at *Bruen*'s first step. ....................................................................................... 9

        2. The district court wrongly disregarded the Supreme Court's category of "presumptively lawful" gun regulations. ............................................... 12

        3. The district court misapplied *Bruen*'s second step by demanding the Governor show a historical "twin," rather than a historical analogue. .. 14

        4. Reconstruction-era history is highly relevant to understanding the Second Amendment's scope. ............................................................... 17

III.    Colorado will be irreparably injured if a stay of the injunction is not granted pending appeal. ....................................................................................... 19

IV.    Granting a stay of the preliminary injunction will not substantially harm Plaintiffs. ...................................................................................................... 19

V.    The public interest strongly favors staying the preliminary injunction pending appeal. .......................................................................................................... 20

CONCLUSION ....................................................................................................... 21

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Arizonans for Official English v. Arizona*,
  520 U.S. 43 (1997) ...................................................................... 8

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .................................................................. 20

*Colo. Outfitters Ass'n v. Hickenlooper*,
  823 F.3d 537 (10th Cir. 2016) .................................................... 9

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ................................................ 2, 10, 12, 13, 14, 17, 18

*Elrod v. Burns*,
  427 U.S. 347 (1976) .................................................................. 19

*Fish v. Kobach*,
  840 F.3d 710 (10th Cir. 2016) ............................................... 20, 21

*Hilton v. Braunskill*,
  481 U.S. 770 (1987) .................................................................... 7

*Hirschfeld v. BATFE*,
  5 F.4th 407 (4th Cir. 2021) ....................................................... 13

*Kan. Health Care Ass'n v. Kan. Dep't of Soc. and Rehabilitation Servs.*,
  958 F.2d 1018 (10th Cir. 1992) .................................................... 8

*Lara v. Evanchick*,
  534 F. Supp. 3d 478 (W.D. Pa. 2021) .................................... 11, 12

*Maryland v. King*,
  567 U.S. 1301 (2012) ................................................................ 19

*Mitchell v. Atkins*,
  483 F. Supp. 3d 985 (W.D. Wash. 2020) ............................... 12, 13

*Morse v. Frederick*,
  551 U.S. 393 (2007) .................................................................. 10

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  142 S. Ct. 2111 (2022) ........................................................ passim

*Nova Health Sys. v. Gandy*,
  416 F.3d 1149 (10th Cir. 2005) .................................................... 9

*NRA v. BATFE*,
  700 F.3d 185 (5th Cir. 2012) .............................................. 11, 13

iv

*NRA v. Bondi*,
   61 F.4th 1317 (11th Cir. 2023) .................................................................. 11

*Powell v. Tompkins*,
   926 F. Supp. 2d 367 (D. Mass. 2013) ........................................................ 11

*Reese v. BATFE*,
   2022 WL 17859138 (W.D. La. Dec. 21, 2022) .......................................... 11

*Rocky Mountain Gun Owners v. Polis*,
   467 P.3d 314 (Colo. 2020) ................................................................... 2, 20

*Schaffer ex rel. Schaffer v. Weast*,
   546 U.S. 49 (2005) ...................................................................................... 10

*Stevison v. Enid Health Sys.*,
   920 F.3d 710 (10th Cir. 1990) ................................................................... 12

*Tennessee v. Callicutt*,
   69 Tenn. 714 (Tenn. 1878) ................................................................. 10, 17

*United States v. Minter*,
   635 F. Supp. 3d 352 (M.D. Penn. 2022) ............................................. 13, 14

*United States v. Price*,
   635 F. Supp. 3d 455 (S.D. W. Va. 2022) .................................................. 14

*Warner v. Gross*,
   776 F.3d 721 (10th Cir. 2015) ..................................................................... 7

## STATUTES

§ 18-12-112, C.R.S. ........................................................................................ 3

18 U.S.C. § 922 ............................................................................................... 3

28 U.S.C. § 1292 ............................................................................................. 7

28 U.S.C. § 1331 ............................................................................................. 7

## CONSTITUTION

U.S. Const., amend. I ................................................................................... 10

U.S. Const., amend. II ......................................................................... passim

U.S. Const., amend. XIV ....................................................................... 17, 18

## RULES

Fed. R. Civ. P. 8 .............................................................................................. 1

10th Cir. R. 8.1 ................................................................................................ 7

**OTHER AUTHORITIES**

S.B. 23-169, 1st Reg. Sess., 74th Colo. Gen. Assemb. .............................................passim

Thomas M. Cooley, *Treatise on Constitutional Limitations*, 740 n.4 (5th ed. 1883) ....... 17

## LIST OF SUPPORTING DOCUMENTS

➢ Appendix A: Colorado Senate Bill 23-169 (Doc. 1-1);

➢ Appendix B: Complaint (Doc. 1);

➢ Appendix C: First Amended Complaint (Doc. 9);

➢ Appendix D: Motion for Preliminary Injunction (Doc. 12);

➢ Appendix E: Response to Plaintiffs' Motion for Preliminary Injunction (Doc. 28);

➢ Appendix F: Reply in Support of Motion for Preliminary Injunction (Doc. 30);

➢ Appendix G: Plaintiffs' Declarations (Doc. 12-1, 12-2, 12-3);

➢ Appendix H: Declaration of Professor Saul Cornell (Doc. 28-1);

➢ Appendix I: Declaration of Professor Robert Spitzer (Doc. 28-2);

➢ Appendix J: Chart of State Historical Analogues for Restrictions on 18-to-20-year-old Firearm Sales (Doc. 28-5);

➢ Appendix K: Declaration of Brennan Rivas, Ph.D. (Doc. 28-3);

➢ Appendix L: Declaration of Professor Laurence Steinberg (Doc. 28-4);

➢ Appendix M: District Court's Preliminary Injunction Order (Doc. 37);

➢ Appendix N: Motion for a Stay of the Preliminary Injunction Pending Appeal (Doc. 42);

➢ Appendix O: Declaration of Nicholaus Baumgart (Doc. 42-1);

➢ Appendix P: Response to Motion for a Stay of the Preliminary Injunction Pending Appeal (Doc. 47);

➢ Appendix Q: District Court Order Denying Motion to Stay Preliminary Injunction (Doc. 48).

Governor Polis seeks a stay of the district court's preliminary injunction pending this Court's review because the district court failed to hold the Plaintiffs to their evidentiary burden. *See* Fed. R. App. P. 8(a)(2). In response to an alarming rise in gun deaths among 18-to-20-year-olds, Colorado passed a law raising the minimum age to purchase firearms from 18 to 21. Plaintiffs sued and sought to preliminarily enjoin the law. However, Plaintiffs presented no evidence of the concrete plans to purchase firearms needed to establish their standing. Contrary to recent Supreme Court guidance, Plaintiffs also failed to present *any* evidence establishing that the plain text of the Second Amendment establishes a right of 18-to-20-year-olds to purchase firearms. The district court took the extraordinary step of enjoining Colorado's law without holding a hearing or addressing Plaintiffs' evidentiary void.

In doing so, the lower court also misapplied the governing legal standard to arrive at the erroneous conclusion that Colorado's age-restriction law is historically unsupported. Nothing could be further from the truth. Colorado presented extensive evidence—including four expert witnesses and over 100 historical examples of firearm age-based state laws—showing that Colorado's law closely aligns with Founding- and Reconstruction-era restrictions on the use and possession of firearms by 18-to-20-year-olds. This testimony is unrebutted. By demanding the State first point to a near perfect historical twin that existed in 1791, the district court imposed an impossible burden not required by the Supreme Court.

1

The district court's injunction is also contrary to the public interest. Firearms are now the leading cause of death for 18-to-20-year-olds. App. E at 1 n.1. And this month, high school- and college-age students are returning to Colorado classrooms in droves to start the new school year. Colorado is all too familiar with the dangers gun violence poses to young people. *See Rocky Mountain Gun Owners v. Polis*, 467 P.3d 314, 317 (Colo. 2020). Colorado therefore respectfully requests that this Court stay the district court's preliminary injunction pending its appellate review. Plaintiffs oppose this motion.

## BACKGROUND

### A.    Legal Framework for Second Amendment Challenges

The Supreme Court in *Bruen* announced a new test for evaluating firearm restrictions under the Second Amendment. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). First, the court must determine if the Second Amendment's plain text covers the individual's conduct. *Id.* at 2126. The Court has cautioned that the "right secured by the Second Amendment is not unlimited" and individual self-defense is "the central component." *District of Columbia v. Heller*, 554 U.S. 570, 599, 626 (2008). Second, if the conduct is covered by the Second Amendment's plain text, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. When a state law exists to address "unprecedented societal concerns" not present at the Nation's Founding, the "lack of a distinctly similar historical regulation" is not dispositive. *Id.* at 2131-32. Instead, a court must "reason[] by analogy" and the State must

2

"identify a well-established and representative historical *analogue*, not a historical *twin*."
*Id.* at 2132-33.

This test is not a "regulatory straightjacket" and the State need not identify a
historical "dead ringer" for its law to pass constitutional muster. *Id.* at 2133.

### B.    Factual and Procedural History

Governor Polis signed SB23-169 into law on April 28, 2023. App. A. Federal law
already prohibits licensed gun dealers from selling a shotgun or rifle to anyone under 18-
years-old, and the sale of all other firearms to anyone under 21. 18 U.S.C. § 922(b)(1).
Colorado's SB23-169 raises this age from 18 to 21 for all firearms by regulating private
sellers and gun dealers. App. A, §§ 2-3. SB23-169 does not, however, prohibit anyone's
*possession* or *use* of firearms, nor does it prevent 18-to-20-year-olds from acquiring
firearms outside of commercial or private sales. Colo. Rev. Stat. § 18-12-112(6). An 18-
to-20-year-old may still possess and use firearms they acquire, borrow, inherit, or receive
as gifts from a family member. *Id.* SB23-169 also exempts certain individuals from its
age restriction, including active members of the Armed Forces, on-duty peace officers,
and others. App. A, §§ 2-3.

Plaintiffs filed their lawsuit challenging SB23-169 on April 28, 2023, the same
day the bill was signed by the Governor. App. B. After amending their complaint, App.
C, Plaintiffs filed their motion for preliminary injunction on June 7, 2023, two months
before SB23-169's effective date. App. D. The motion was fully briefed on July 12,
2023. App. E, F.

### C.     The Parties' Evidence and Arguments

Plaintiffs presented no expert testimony or other historical evidence in support of their motion for a preliminary injunction. The *only* evidence accompanying their motion was Plaintiffs' own declarations. App. G. Each was light on details. For example, Plaintiffs said merely that they presently "desire to lawfully purchase a firearm," that they are or "soon will be precluded from purchasing a firearm by SB23-169," and that they have no criminal record. *Id.* at Doc. 12-2, 12-3.

The Governor, by contrast, submitted over 320 pages of sworn declarations and supporting exhibits from four leading experts. They included:

➢ Dr. Saul Cornell, the Chair in American History at Fordham University: Dr. Cornell testified that the Second Amendment was not understood at the Founding to apply to 18-to-20-year-olds, who were minors without full legal rights. App. H at 19-23. Minors' service in early militias was also under parents' supervision. *Id.* at 37-41. The States' conscription of minors into the militia was consistent with the government's intense regulation of minors, not an indicator of minors holding a broad Second Amendment right to purchase firearms. *Id.*

➢ Dr. Robert Spitzer, Professor of Political Science Emeritus at the State University of New York at Cortland: Dr. Spitzer testified regarding historical restrictions on 18-to-20-year-olds' ability to use and possess firearms. App. I. These included, for example, over 100 Founding- and Reconstruction-era

restrictions by states and cities. *Id.* at 6-13; *see also* App. J (chart of historical state laws). The Nation's early universities and colleges, including public institutions, also enacted bans on students possessing firearms, starting as early as 1655 and continuing through Reconstruction. App. I at 14-17.

➢ Dr. Brennan Rivas, Ph.D. in history from Texas Christian University: Dr. Rivas testified that gun restrictions in the 19th century, including age-based laws, continued to grow due to dramatic societal changes, unprecedented violence, and evolution in firearm technology, manufacturing, and distribution. App. K at 4-28.

➢ Dr. Laurence Steinberg, Professor of Psychology and Neuroscience at Temple University: Dr. Steinberg testified that risk-taking peaks in the late teens and early 20s because the human brain is still developing before the age of 21. App. L at 16, 20.

## D. The District Court's Order

Without holding a hearing to take testimony or hear argument, the district court preliminarily enjoined SB23-169. App. M.

The court first addressed Plaintiffs' standing. *Id.* at 5-16. After determining that the organizational plaintiff, RMGO, lacked standing, the court analyzed whether the two individual Plaintiffs had adequately alleged an injury. *Id.* at 12-16. The court expressed strong reservations regarding the individual Plaintiffs' failure to allege any concrete plans to engage in conduct prohibited by SB23-169: they "do not state that they will purchase

firearms after the law goes into effect, that they have previously purchased firearms, or that they have taken any steps to prepare to purchase firearms." *Id.* at 12 n.6. Despite these deficiencies, the court found their sparse allegations sufficient for standing purposes "[a]t this phase of the proceedings." *Id.* The court said it "does not pass" on Plaintiffs' standing for "other stages of the case." *Id.*

On the merits, the district court ruled against the Governor under both steps of the *Bruen* test. At the first step, the court found that the Second Amendment's text covers the right of 18-to-20-year-olds to purchase firearms. App. M at 25, 28. The court arrived at this conclusion even though Plaintiffs produced no historical evidence indicating that the public at the Founding understood the amendment as conferring rights on those under 21. Instead, the court placed the burden on the Governor at *Bruen*'s first step to show a "historical tradition of firearm regulation of 18-to-20 year olds[.]" App. M at 25. At *Bruen*'s second step, the court rejected the Governor's extensive historical evidence showing a long tradition of placing restrictions on 18-to-20-year-olds' use of firearms. *Id.* at 28-40. The Governor's historical analogues, the district court said, were insufficiently analogous because the Governor did not point to any "total prohibition" on the sale of firearms to minors during the Founding era. *Id.* at 39.

The Governor moved to stay the district court's preliminary injunction pending appellate review, App. N, which the district court denied on August 18, 2023. App. Q.

## JURISDICTION

This Court has jurisdiction to review the district court's preliminary injunction under 28 U.S.C. § 1292(a)(1). Plaintiffs alleged the district court had jurisdiction under 28 U.S.C. § 1331.

## ARGUMENT

### I.    Legal standard for a stay of the preliminary injunction pending appeal.

A motion for a stay of an injunction pending appeal is subject to the same standards as a motion for a preliminary injunction. *Warner v. Gross*, 776 F.3d 721, 728 (10th Cir. 2015). The Court considers (1) whether the movant has made a strong showing that they are likely to prevail on the merits of their appeal; (2) whether the movant will be irreparably injured if the stay is not granted; (3) whether granting the stay will substantially harm the opposing parties; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); 10th Cir. R. 8.1.

Here, each factor weighs in favor of staying the district court's injunction.

### II.   The Governor is likely to prevail on the merits of his appeal.

#### A.    The record does not establish that the individual Plaintiffs have standing.

The Governor's response to the preliminary injunction motion argued that the individual Plaintiffs' allegations were insufficient to establish their standing. App. E at 8. The Plaintiffs' bare-bones declarations contained no detailed allegations regarding how SB23-169 allegedly infringes their rights beyond simply stating they "desire to lawfully

purchase firearms … including for self-defense in [their] home." App. G at Doc. 12-2, 12-3. The district court also admitted it was not aware of the individual Plaintiffs' current age, rendering it unclear whether SB23-169 even applies to them. App. M at 14 n.8. Nonetheless, the district court "exercise[ed] its discretion not to hold a hearing" on Plaintiffs' preliminary injunction motion to resolve these jurisdictional prerequisites, *id.* at 4 n.4, and found their allegations adequate "[a]t this phase of the proceedings," *id.* at 12 n.6.

This was error for two reasons. First, the district court incorrectly relieved Plaintiffs of their burden of establishing standing at the preliminary injunction phase. It disaggregated the preliminary injunction phase from the "other stages of the case," stating it reserved ruling on Plaintiffs' standing for purposes of later stages. *Id.* But an injury must exist at "all stages" of the lawsuit, including the preliminary injunction stage. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quotation omitted); *see Kan. Health Care Ass'n v. Kan. Dep't of Soc. and Rehabilitation Servs*., 958 F.2d 1018, 1021-23 (10th Cir. 1992) (reversing and vacating preliminary injunction because plaintiffs lacked standing). The district court erred by relieving Plaintiffs of their burden to establish standing.

Second, to the extent the district court required Plaintiffs to come forward with *any* evidence of their standing, it erroneously lowered Plaintiffs' required burden of proof. To establish the required injury-in-fact, the plaintiff must show an injury that is

"concrete, particularized, and actual or imminent." *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 544 (10th Cir. 2016). In *Colorado Outfitters*, a similar Second Amendment case, this Court held that certain plaintiffs lacked standing because they had no "concrete plans to engage in conduct" that violated Colorado's ban on large capacity magazines. *Id.* at 551. The plaintiffs' allegations that they would purchase a large capacity magazine "some day" were insufficient to establish an imminent injury. *Id.*

The same rationale should have led the district court to find that the individual Plaintiffs' bare allegation of an intent to purchase firearms, without more, falls short of establishing a concrete plan to engage in protected conduct. A court is "powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005) (citation omitted). By loosening Article III's injury requirement, the district court found standing where none exists. This Court should therefore stay the preliminary injunction pending its review.

**B.    The Governor is likely to prevail under the *Bruen* standard.**

Even if the individual Plaintiffs have standing, the Governor is still likely to succeed on the merits on his appeal. The district court committed multiple errors in its *Bruen* analysis, any one of which is sufficient to reverse the preliminary injunction.

**1.   The district court erred by shifting the burden to the Governor at *Bruen*'s first step.**

Plaintiffs failed to satisfy *Bruen*'s first step because they failed to show through a textual-historical inquiry that the Second Amendment prohibits States from regulating

9

commercial sales to 18-to-20-year-olds.[1] App. E at 6-8; *see Heller*, 554 U.S. at 576-77 (when interpreting constitutional text, the court interprets words as "known to ordinary citizens in the founding generation"). Specifically, Plaintiffs merely asserted that the right to keep and bear "necessarily implies" the right of those under 21 to purchase firearms without presenting any historical evidence that the text was actually understood this way. App. D at 5. In fact, in the only known early challenge to age-restrictions, the Tennessee Supreme Court held the plain text did not "necessarily impl[y]" a right by those under 21 to buy firearms. *Tennessee v. Callicutt*, 69 Tenn. 714, 716 (Tenn. 1878). The district court ignored the Governor's reference to this case entirely.

In support of the Governor, Professor Cornell explained that 18-to-20-year-olds were minors without full legal rights when the Second Amendment was adopted. App. H at 19-23. Only in the late 20th century did our Nation recognize 18-to-20-year-olds' role in the political community with First Amendment protection and the right to vote under the Twenty-Sixth Amendment. *Id* at 23–24; *accord Morse v. Frederick*, 551 U.S. 393, 410-11 (2007) (Thomas, J., concurring) (history "suggests that the First Amendment, as originally understood, does not protect student speech in public schools."). Plaintiffs conceded that the age of majority was 21 during the Founding era. App. D at 10.

---

[1] In contrast to *Bruen*'s second step, which explicitly lodges the burden with the government, the Court did not discuss the allocation of the burden for the first step. 142 S. Ct. at 2126. Accordingly, the "default rule" prevails—Plaintiffs "bear the risk of failing to prove their claims." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005).

Consistent with Professor Cornell's view, courts across the country have upheld age-based firearm restrictions based on 18-to-20-year-olds' historical status as minors. *See Reese v. BATFE*, __ F. Supp. 3d __, 2022 WL 17859138, at *10 (W.D. La. Dec. 21, 2022) (upholding age-restriction because "the Founders likely would not have been of the opinion that [18-to-20-year-olds] enjoy the full scope of rights encompassed in the Second Amendment."); *see also NRA v. Bondi*, 61 F.4th 1317, 1330-31 (11th Cir. 2023), *reh'g en banc granted and panel decision vacated*, 72 F.4th 1346 (11th Cir. 2023); *NRA v. BATFE*, 700 F.3d 185, 203 (5th Cir. 2012), *abrogated on other grounds*, 142 S. Ct. 2111 (2022); *Lara v. Evanchick*, 534 F. Supp. 3d 478, 487 (W.D. Pa. 2021); *Powell v. Tompkins*, 926 F. Supp. 2d 367, 387 (D. Mass. 2013).

Despite Plaintiffs offering no expert testimony, rebuttal or otherwise, the district court rejected the Governor's evidence and enjoined Colorado's law. The court held that the Governor had not presented evidence of a historical tradition, only evidence that "states could have regulated 18-to-20 year olds because they lacked rights as minors." App. M at 25. But by doing so, the district court rendered *Bruen* an impossible test. States must now bear the burden at *Bruen*'s second step of pointing to a historical restriction on the right before the plaintiffs at *Bruen's* first step have even demonstrated such a right historically existed. But the absence of Founding era regulations cannot indicate a lack of historical tradition if the Founding generation never understood the Second Amendment to cover the conduct in the first place. The district court's failure to demand that Plaintiffs

11

carry their burden of satisfying *Bruen*'s first step—and its improper shifting of the burden to the Governor—merits staying the preliminary injunction. *See Stevison v. Enid Health Sys.*, 920 F.3d 710, 714 (10th Cir. 1990) (reversing where district court improperly shifted burden of proof).

**2.  The district court wrongly disregarded the Supreme Court's category of "presumptively lawful" gun regulations.**

Next, the district court committed reversible error by effectively nullifying *Heller*'s category of "presumptively lawful" gun regulations. *Heller*, 554 U.S. at 627 & n.26; *accord Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) & 2162 (Kavanaugh, J., concurring) (recognizing that *Bruen* does not disturb this category from *Heller*). The Court in *Heller* explained that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and governments buildings, or laws imposing conditions and qualifications on the commercial sale of arms." 554 U.S. at 626-27. *Heller* described this non-exhaustive list of presumptively lawful regulations as "exceptions" to the Second Amendment, *id.* at 635, and part of what "the Constitution leaves [to the States as] … tools for combating" modern gun violence, *id.* at 636. Multiple courts have looked to *Heller*'s "conditions and qualifications" carve-out to hold that the Second Amendment does not reach commercial age-based restrictions. *See, e.g.*, *Lara*, 534 F. Supp. 3d at 489; *Mitchell v. Atkins*, 483 F. Supp. 3d 985, 992-94 (W.D. Wash. 2020), *vacated and remanded on other grounds*, 2022

12

WL 17420766 (9th Cir. 2022); *NRA v. BATFE*, 700 F.3d at 206; *but see Hirschfeld v. BATFE*, 5 F.4th 407, 416 (4th Cir. 2021), *vacated as moot*, 14 F.4th 322 (4th Cir. 2021).

The Governor argued below that SB23-169 falls into this category of presumptively lawful regulations as a condition on the commercial sale of firearms. App. E at 8-10. Contrary to the district court's holding, App. M at 30, the law regulates firearm sellers, not just buyers, preventing them from selling to anyone under 21. App. A, §§ 2-3.

The district court instead held that even regulations falling into *Heller*'s presumptively lawful category are subject to *Bruen*'s two-part test, including the second step where the government carries the burden of showing historical analogues. App. M at 28-31. The district court wrongly flipped *Heller*'s presumption on its head. Instead of presuming that the challenged regulation is constitutional as the Supreme Court has instructed, the government must now bear the burden of showing a historical analogue for laws that gave the *Heller* Court no pause. This effectively nullifies the presumptively lawful category, since few to no historical analogues existed prior to the 20th century for many of the laws that *Heller* held are presumptively valid. *See Bruen*, 142 S. Ct. at 2133 (noting "relatively few" "sensitive places" in the historical record but continuing to recognize the "lawfulness of such prohibitions").

Other courts have correctly rejected this call to invalidate *Heller*'s presumptively lawful category after *Bruen*. *See, e.g.*, *United States v. Minter*, 635 F. Supp. 3d 352, 361 (M.D. Penn. 2022) ("Where *Bruen* did not overturn, abrogate, or otherwise suggest that

the longstanding prohibitions identified in *Heller*, including the prohibition of possession of firearms by felons, may no longer be lawful, this Court is bound by the Supreme Court's decision in *Heller*."); *United States v. Price*, 635 F. Supp. 3d 455, 466 (S.D. W. Va. 2022) (similar). These courts rightly hold that *Bruen*'s two-step test need not be applied to presumptively lawful regulations that the Supreme Court has "already signaled" are constitutional. *Minter*, 635 F. Supp. 3d at 358; *accord Price*, 635 F. Supp. 3d at 466. The district court's failure to follow, let alone analyze, the Supreme Court's category of presumptively lawful regulations justifies staying its preliminary injunction.

>   **3.    The district court misapplied *Bruen*'s second step by demanding the Governor show a historical "twin," rather than a historical analogue.**

Although the district court's analysis should have started and ended at *Bruen*'s first step, the court also erred at *Bruen*'s second step by holding the Governor to an incorrect burden. *Bruen* made clear that the State need not identify a historical "dead ringer" or "historical twin" for its law to pass constitutional muster. 142 S. Ct. at 2133. Identifying a "historical analogue" is sufficient, as a court's task is to "reason[] by analogy" when considering modern firearm regulations, not flyspeck what laws existed in 1791. *Id*.

But instead of applying this principle from *Bruen*, the district court held Colorado to a "dead ringer" standard, stating the Governor "fail[ed] to point to any evidence during the Founding era that a total prohibition on the sale of firearms to minors was consistent

14

with the right to bear arms[.]" App. M at 39-40. Requiring that the Governor show a "total prohibition" in the historical record, however, amounts to a "historical twin" not demanded by *Bruen*. 142 S. Ct. at 2133. The district court's ruling would haplessly handcuff States, rendering them unable to protect their citizens from "circumstances beyond those the Founders specifically anticipated." *Bruen*, 142 S. Ct. at 2132.

The Governor's unrebutted evidence of historical analogues is robust. For example, the Governor's unrebutted evidence showed that colleges in the colonial and early republic eras acted as a parental substitute over their students, most of whom were 18 to 22 years old. App. H at 27 ("[M]inors attending college traded strict parental authority for an equally restrictive rule of in *loco parentis*."); App. I at 14-17. The district court dismissed this evidence, concluding that colleges did not prohibit students from possessing firearms "because of their age." App. M at 35. Citing no historical evidence (because Plaintiffs submitted none), the district court instead thought early college bans "could just as easily have been based on their status as students living together in dormitories." *Id.* at 35. But early colleges acted in place of a parent precisely because a college student's age meant they were not yet full-fledged adults. While perhaps not a "dead ringer," early college bans on firearms satisfies *Bruen*'s more flexible "historical analogue" rubric.

So, too, with the other Founding- and Reconstruction-era restrictions on minors identified by the Governor. For the pre-Civil War Founding period, the Governor pointed

15

to multiple state and city restrictions on minors' firearm use. App. E at 17. In 1803, for example, the City of New York prohibited the fire or discharge of any gun or pistol and made parents responsible for any unlawful discharge by a minor. App. I at 7-8. Similar restrictions were adopted by cities in Delaware (1812), South Carolina (1817), Connecticut (1835), and Kentucky (1853, 1859, 1860). *Id.* at 8. The three Kentucky laws prohibited sales of pistols and gunpowder to a minor. *Id.* at 8–9. In 1856, Alabama prohibited "anyone who shall sell or give or lend" a pistol to a minor statewide. *Id.* at 9. Two years later, in 1858, Tennessee enacted a similar law prohibiting selling, giving, or lending to a minor a pistol, fighting knife or "like dangerous weapon." *Id.* In both States, the age of majority was 21.

The Governor also identified numerous states that adopted restrictions like Alabama and Tennessee in the post-Civil War era. App. E at 17-18; App. I at 9. From 1855 to 1900, 19 States and the District of Columbia adopted laws regulating firearm sales to those under 21-years-old. App. J. (chart of state laws). By the early-20th century, some 45 States had enacted nearly 100 laws restricting the sale of firearms to minors. App. I at 9-10. These state laws varied, but generally prohibited gun transfers to minors. *Id.* at 10. The specific age limit varied with each state, although 21 was the most widely used age. *Id.* at 10.

The Governor also showed that the public's understanding on age restrictions was reflected in contemporaneous legal decisions and commentary. *See Bruen*, 142 S. Ct. at

2128 (discussing use of post-ratification history). Thomas Cooley—a 19th century scholar whose "massively popular 1868 Treatise on Constitutional Limitations" was cited favorably in *Heller*, 554 U.S. at 616-17—wrote in the same work that "the State may prohibit the sale of arms to minors" under the State's police power. Thomas M. Cooley, *Treatise on Constitutional Limitations*, 740 n.4 (5th ed. 1883). And in the only historic challenge to age-restriction laws, the Tennessee Supreme Court rejected a Second Amendment challenge brought by a defendant charged with selling a pistol to a minor. *Callicutt*, 69 Tenn. at 716-17.

Presented with this exhaustive survey of our Nation's history of age-related restrictions, the district court should have "reason[ed] by analogy" and determined that the Governor showed SB23-169 is "relevantly similar" to historical analogues. *Bruen*, 142 S. Ct. at 2132-33. After all, the Constitution "can, and must, apply to circumstances beyond those the Founders specifically anticipated." *Id.* The district court's misapplication of *Bruen*'s second step shows the Governor is likely to succeed in his appeal.

### 4. Reconstruction-era history is highly relevant to understanding the Second Amendment's scope.

The district court also erred at *Bruen*'s second step by rejecting the historical analogues from the time surrounding the Fourteenth Amendment's ratification in 1868. App. M at 39-40.

The Supreme Court does not require lower courts to ignore 19th century history. *Heller* looked to how the text was interpreted "from immediately after its ratification through the end of the 19th century." 554 U.S. at 605. Post-ratification history is a "critical tool of constitutional interpretation" to "determine *the public understanding*" of the amendment. *Id.* While noting the "ongoing scholarly debate" on the question, *Bruen* ultimately declined to decide whether courts should rely "primarily" on Reconstruction-era history when deciding Second Amendment challenges brought against state laws. 142 S. Ct. at 2138. But notably, the *Bruen* Court looked to the historical record from the "18th- and 19th-century" when continuing to uphold *Heller*'s "sensitive places" category. *Id.* at 2133.

This is consistent with how the Supreme Court has instructed courts to consider history. "Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*." *Id.* at 2136 (quotations omitted). States like Colorado are "bound to respect the right to keep and bear arms because of the Fourteenth Amendment, not the Second." *Bruen*, 142 S. Ct. at 2137. The Fourteenth Amendment was ratified in 1868, *after* many states had already passed laws restricting firearm sales to minors, and eight years *before* Coloradans elected to join the Union and subject themselves to the Fourteenth Amendment. The popular understanding of the Second Amendment from this time is therefore highly relevant to understanding the scope of the right. The district court erred by holding otherwise.

18

**III.     Colorado will be irreparably injured if a stay of the injunction is not granted pending appeal.**

A stay of the preliminary injunction pending appeal is also necessary because Colorado is suffering, and will continue to suffer, irreparable injury each day that SB23-169 remains enjoined. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012).

In just the five-day period between August 5 and August 10, 2023, some 54 Coloradans aged 18-to-20-years-old attempted to purchase firearms. App. O. Many would not have been eligible if SB23-169 were in effect. More will occur each day that the law remains enjoined. These attempted purchases are especially troubling because firearms are now the leading cause of death for 18-to-20-year-olds in Colorado and the United States. App. E at 1.

**IV.     Granting a stay of the preliminary injunction will not substantially harm Plaintiffs.**

Conversely, granting a stay of the preliminary injunction will not substantially harm Plaintiffs. To show irreparable harm, Plaintiffs were required to show that their rights were threatened or actually impaired "*at the time relief was sought.*" *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (emphasis added). The individual Plaintiffs had ample opportunity to acquire firearms in the two months between their preliminary injunction motion and the law's August 7, 2023, effective date. *If* they failed to do so—which is yet another point on which the record is silent—it was Plaintiffs' own voluntary choice. Such

injuries do not support relief from a federal court. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (plaintiffs "cannot manufacture standing" by self-inflicting harm).

The district court found the individual Plaintiffs made the requisite showing because the violation of a constitutional right alone constitutes irreparable harm. App. M at 41. But the court was obligated to "nonetheless engage in [the] traditional equitable inquiry as to the presence of irreparable harm in such a context[.]" *Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016). Here, the individual Plaintiffs easily could have avoided their claimed harm. And the record is devoid of any evidence suggesting that they have concrete plans to engage in conduct that violates Colorado law. This falls well short of irreparable harm.

## V.    The public interest strongly favors staying the preliminary injunction pending appeal.

Absent a stay, Colorado will be foreclosed from enforcing a law enacted by its elected representatives and signed into law by the Governor to combat gun violence, teen suicide, and mass shootings. These tragedies are well-known to Colorado. *See Rocky Mountain Gun Owners*, 467 P.3d at 317 (noting the dozens of people wounded and injured in shootings). Most troubling, the district court's injunction takes effect the same month that schoolchildren across Colorado will be returning to the classroom to start the new school year. The lower court's injunction allows some of those schoolchildren to purchase guns, contrary to the will of the people of Colorado.

By enacting SB23-169, Colorado's legislature determined it would serve the public interest and promote public safety if the minimum age to purchase firearms was raised to 21. *See Fish*, 840 F.3d at 755 ("our democratically elected representatives are in a better position than this Court to determine the public interest."). Risk taking peaks in the late teens and early 20s because the human brain is still developing. App. L at 16. Widely available firearm purchases by this group threatens lives. Coloradans will undoubtedly be harmed unless SB23-169 can be enforced while appellate review proceeds. The public interest strongly favors a stay.

## CONCLUSION

This Court should stay the district court's preliminary injunction pending appeal.

Dated: August 21, 2023

PHILIP J. WEISER
Attorney General

*s/ Grant T. Sullivan*
*Grant T. Sullivan*, Assistant Solicitor General*
*Michael T. Kotlarczyk,* Senior Assistant Attorney General*
*Matthew J. Worthington*, Assistant Attorney General*
1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: (720) 508-6349
Email: grant.sullivan@coag.gov;
mike.kotlarczyk@coag.gov; matt.worthington@coag.gov
*Attorneys for Governor Jared Polis*
*Counsel of Record

21

## <u>10th Cir. R. 8.2 CERTIFICATE</u>

1. The district court's denial of the Governor's motion to stay the preliminary injunction pending appellate review was entered on Friday, August 18, 2023, at 2:45 p.m. This motion was filed as early as practicable thereafter.

2. The district court's preliminary injunction was entered on August 7, 2023, at approximately 2:39 p.m., and was effective immediately.

3. Plaintiffs' Counsel: Barry Arrington, (303) 205-7870, barry@arringtonpc.com.

4. Defendant's Counsel: Grant T. Sullivan, (720) 508-6349, grant.sullivan@coag.gov; Michael Kotlarczyk, (720) 508-6187, mike.kotlarczyk@coag.gov; Matthew J. Worthington, (720) 508-6124, matt.worthington@coag.gov.

22

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 21, 2023, I served a true and complete copy of the foregoing **GOVERNOR POLIS'S EMERGENCY MOTION TO STAY THE DISTRICT COURT'S PRELIMINARY INJUNCTION PENDING APPEAL** upon all parties herein by e-filing with the CM/ECF system maintained by the court and/or email, addressed as follows:

Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
Voice: (303) 205-7870
Email: barry@arringtonpc.com

*Attorney for Plaintiffs*

<u>*s/ Carmen Van Pelt*</u>
Carmen Van Pelt

23

**WORD COUNT AND TYPEFACE**

1. This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because

     this motion contains 5,135 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

     this brief has been prepared in a proportionally spaced typeface (thirteen-point Times New Roman) using Microsoft Word.

Date: August 21, 2023.

                            *s/ Grant T. Sullivan*
                            GRANT T. SULLIVAN
                            Assistant Solicitor General