No. 23-1251

---

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

JARED POLIS, in his official capacity as Governor of the State of Colorado,

*Defendant-Appellant*,

v.

ROCKY MOUNTAIN GUN OWNERS, TATE MOSGROVE, and ADRIAN S. PINEDA,

*Plaintiffs-Appellees*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO, CASE NO. 23-CV-01077-PAB THE HONORABLE PHILLIP A. BRIMMER, CHIEF JUDGE, PRESIDING

---

## APPELLEES' RESPONSE IN OPPOSITION TO GOVERNOR POLIS'S MOTION FOR STAY PENDING APPEAL

---

BARRY K. ARRINGTON
ARRINGTON LAW FIRM
4195 WADSWORTH BOULEVARD
WHEAT RIDGE, COLORADO 80033
(303) 205-7870
barry@arringtonpc.com

*Attorney for Plaintiffs-Appellees*

1

I.    **The Individual Plaintiffs Have Standing**

    A.    **Mosgrove and Pineda Meet All of the Elements of Standing**

Defendant argues that Mosgrove and Pineda do not have standing. Mot. 7-9. To establish Article III standing, a plaintiff must allege "that (1) he or she has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision." *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003) (*quoting Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997)).

To show injury in fact, a plaintiff must show he has suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted). Where a plaintiff seeks an injunction, he "must be suffering a continuing injury or be under a real and immediate threat of being injured in the future." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). A plaintiff can establish an injury sufficient to establish standing for

2

a pre-enforcement challenge to a law by showing "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder." *Peck v. McCann*, 43 F.4th 1116, 1129 (10th Cir. 2022) (*quoting Ward*, 321 F.3d at 1267).

Mosgrove and Pineda desire to purchase firearms for lawful purposes including self-defense. App. G at Doc. 12-2 at 1, ¶ 2; and 12-3 at 1, ¶ 2. Defendant does not assert that this course of conduct is not arguably affected with a constitutional interest. It clearly is. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022) (right to bear firearms for self-defense protected by the Second Amendment).[1]

To establish standing it is necessary only to demonstrate that it is "arguable" that a constitutional right has been abridged. *Peck*, 43 F.4th at 1129. Thus, the standing inquiry must not be conflated

---

[1] In the district court, Defendant argued that the Second Amendment does not protect the right to acquire arms. App. E at 7. He has abandoned this argument. This is not surprising because "the core Second Amendment right to keep and bear arms for self-defense wouldn't mean much without the ability to acquire arms." *Teixeira v. County of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017).

with evaluation of the merits. "For purposes of standing, the question cannot be whether the Constitution, properly interpreted, extends protection to the plaintiff's asserted right or interest. If that were the test, every losing claim would be dismissed for want of standing." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 910 (10th Cir. 2014) (*quoting Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1092 (10th Cir.2006) (en banc)). "Rather, we must assume for purposes of the standing inquiry that each claim is legally valid." *Id.*

Defendant does not dispute that SB23-169 makes it a criminal offense for an 18-to-20-year-old person to purchase a firearm and that Mosgrove and Pineda are both under the age of 21. App. G at Doc. 12-2 at 1, ¶ 2; and 12-3 at 1, ¶ 2.

Finally, there is a credible threat of prosecution if Mosgrove and Pineda follow through on their desire to purchase firearms. "[A] plaintiff need not risk actual prosecution before challenging an allegedly unconstitutional criminal statute." *Bronson v. Swensen*, 500 F.3d 1099, 1107 (10th Cir. 2007). Instead, standing exists if

there is "an objectively justified fear of real consequences." *Peck*, 43 F.4th at 1132 (citation and internal quotation marks omitted).

*Virginia v. American Booksellers Assoc.*, 484 U.S. 383 (1988), is instructive. In that case, the plaintiff brought a challenge to the statue before its effective date.[2] *Id.*, 484 U.S. at 392. The Court rejected Virginia's standing defense, holding: "The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise." *Id.*, 484 U.S. at 393 (emphasis added).

While standing may not exist if the state has "disavowed future enforcement," *Peck*, 43 F.4th at 1132, just the opposite is true in this case. The Governor does not assert the new law will not be enforced against Mosgrove and Pineda. He insists that it will be. Indeed, he argues that the whole reason a stay is necessary is

---

[2] In the district court, Defendant argued that standing necessarily did not exist because the effective date of the statute was in the future when the complaint was filed. He has also abandoned this argument given the authority to the contrary. *American Booksellers, supra. See also Am. C.L. Union v. Johnson*, 194 F.3d 1149, 1154 (10th Cir. 1999) (standing existed prior to effective date of statute); *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 536 (1925) (suit prior to effective date of statute not premature).

because, in his view, it is vital to enforce the statute against Plaintiffs and those similarly situated while this appeal is pending. Mot. 21.

The second and third elements of the standing analysis are not disputed. Defendant does not argue that these Plaintiffs have failed to establish causation and redressability. SB23-169 prohibits them from purchasing firearms. There is obviously a causal connection between the injury they allege and the existence of the statute. *See Aptive Env't, LLC v. Town of Castle Rock*, 959 F.3d 961, 978 (10th Cir. 2020). Moreover, there is no dispute that enjoining the enforcement of SB23-169 redresses these Plaintiffs' injuries by removing the alleged violation of their Second Amendment rights. *Id.*

Courts have held that standing exists in circumstances identical to Mosgrove's and Pineda's. *See Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 2023 WL 3355339 at *4 (E.D. Va. May 10, 2023); (18-to-20-year-old standing upheld); *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 191–92 (5th Cir. 2012) (same); and *Reese*

*v. Bureau of Alcohol Tobacco Firearms & Explosives*, 2022 WL 17859138, at *3 (W.D. La. Dec. 21, 2022) (same). Other courts have held standing exists with respect to similar arms bans. *See Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014); *Teter v. Lopez*, 2023 WL 5008203 (9th Cir. Aug. 7, 2023); *Sullivan v. Ferguson*, 636 F. Supp. 3d 1276, 1286 (W.D. Wash. 2022); *Bevis v. City of Naperville, Illinois*, 2023 WL 2077392, at *5 (N.D. Ill. Feb. 17, 2023); and *Barnett v. Raoul*, 2023 WL 3160285, at *2 (S.D. Ill. Apr. 28, 2023).

## B.     Defendant's Standing Arguments Fail

Defendant asserts the district court erred by failing to hold a hearing. Mot. 1, 5, 8. This argument fails, because Fed.R.Civ.P. 65 does not establish a right to a hearing in the preliminary injunction context. *Jackson v. Fair*, 846 F.2d 811, 819 (1st Cir. 1988). And a reviewing court will overturn the district court's determination of whether to hold a hearing only if there is an abuse of discretion. *Id*. *See also Carbajal v. Warner*, 561 F. App'x 759, 764 (10th Cir. 2014) (same). The district court did not abuse its discretion. Defendant

did not request a hearing; nor did he identify any genuinely disputed facts to be addressed at a hearing.

Defendant asserts the district court erred because "it was not aware of the individual Plaintiff's current age." Mot. 8. This is not accurate. Mosgrove and Pineda stated in their declarations that they were over 18 and under 21. App. G at Doc. 12-2 at 2; and 12-3 at 2. A court is entitled to draw all reasonable inferences from the facts in favor of standing. *Lewis v. Tripp*, 604 F.3d 1221, 1224 n.1 (10th Cir. 2010). It was reasonable for the district court to infer that the plaintiffs had not turned 21 in the days between the time they filed their motion and the time it entered its order. Defendant does not actually argue that the individual Plaintiffs have turned 21 rendering their claim moot, and he never raised a factual dispute relating to their ages.

Next, Defendant argues the court "reliev[ed] Plaintiffs of their burden to establish standing." Mot. 8. The district court did no such thing. Instead, the court held that the evidentiary burden for establishing standing varies depending on the stage of the litigation. App. M at 12, n.6. This is blackletter law. The "proof

8

required to establish standing increases as the suit proceeds." *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1162 (10th Cir. 2023) (internal citations and quotations omitted). The district court held plaintiffs to the applicable standard of proof at the preliminary injunction stage. App. M at 8, *citing Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1185 (10th Cir. 2013) (Matheson, J., concurring).

In response, Defendant cites *Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537 (10th Cir. 2016). But the standing determination made in that case came at the end of a nine-day trial. *Id*. 823 F.3d at 542. Defendant errs when he denies that the proof required to establish standing varies at different stages of the litigation, and he errs when he argues the proof required at the end of a lengthy trial is comparable to the proof required for a preliminary injunction. As discussed above, numerous courts have upheld standing at the preliminary stages of the litigation based on proof practically identical to that adduced by the individual Plaintiffs.

Finally, Defendant asserts that Mosgrove's and Pineda's declarations are insufficient to establish standing. Mot. 9. This too is incorrect. These plaintiffs both assert that is their "present intention and desire to lawfully purchase a firearm for lawful purposes, including self-defense" but they are precluded from doing so by SB23-169. App. G at Doc. 12-2 at 1, ¶ 2; and 12-3 at 1, ¶ 2. In a case on all fours with this one, *Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 2023 WL 3355339 (E.D. Va. May 10, 2023), the plaintiffs sought an injunction against the federal statute that prohibited 18-to-20-year-old adults from purchasing handguns. The court held that the plaintiffs' assertion that they desired to purchase the firearms and would do so but for the statute was sufficient to establish injury in fact. *Id*. at *3. *See also Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 191–92 (5th Cir. 2012), *abrogated on other grounds by Bruen* (the injury of not being able to purchase handguns, standing alone, constituted concrete, particularized injury to 18-to-20-year-olds). In *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953 (9th Cir. 2014), the court held that virtually

identical proof was sufficient to establish an injury in fact at the preliminary injunction stage in an arms ban case. Earlier this month the Ninth Circuit upheld standing in *Teter v. Lopez*, 2023 WL 5008203 (9th Cir. Aug. 7, 2023) in a Second Amendment case. There, the plaintiffs challenged Hawaii's ban on "butterfly" knives, and they alleged that but for the state's ban they would buy such knives. *Id*. at *4. The court held that this was sufficient to establish an injury in fact at the summary judgment stage of litigation. *Id*.

## II.  Defendant Has Failed to Make a Strong Showing That He Will Prevail on the Merits

### A.  Standard of Review

To prevail on his motion for a stay pending appeal, Defendant is required to make a "strong showing" that he is likely to prevail on the merits of his appeal. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). He has failed to do so.

### B.  Plaintiffs Carried Their Burden Under Bruen's "Plain Text" Step

Under *Bruen*, "[1] When the Second Amendment's *plain text* covers an individual's conduct, the Constitution presumptively protects that conduct. [2] The government must then justify its

11

regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*., 142 S. Ct. at 2129-30 (emphasis added).

Defendant asserts that Plaintiffs failed to satisfy *Bruen's* "plain text" step because they failed to show through a "textual-*historical* inquiry" that the Second Amendment prohibits laws such as SB23-169. Mot. 9-10 (emphasis added). This is an attempt by the State to shift its burden onto Plaintiffs. *Bruen* did not impose on Plaintiffs a "textual-historical" burden. It imposed a "plain text" burden. "*Bruen* makes clear that the first step is one based *solely on the text* of the Second Amendment." *U.S. v. Harrison*, 2023 WL 1771138, at *4 (W.D. Okla. Feb. 3, 2023) (emphasis added). Thus, Defendant's approach is an attempt to "shoehorn[] the government's historical-tradition burden onto *Bruen's* initial presumption." *Id*.

That the "plain text" step does not involve a historical inquiry is plain from *Bruen* itself. The specific issue under the "plain text" step in *Bruen* was whether the right to "bear" arms includes the right to bear arms in public. *Id*., 142 S. Ct. at 2134. The Court

devoted only four paragraphs in its lengthy opinion to this step. 142 S. Ct. at 2134-35. The Court cited the dictionary meaning of the operative words and concluded that "[n]othing in the Second Amendment's text draws a home/public distinction with respect to the right to keep and bear arms." *Id*. Conspicuously, the Court did not cite any "historical" sources in this section of its opinion. Thus, Defendant's assertion that *Bruen* requires a historical inquiry at the plain text step is belied by *Bruen* itself. The plain text inquiry is based on just that, the plain text.

In this case, the district court held that the Second Amendment's text extends to the right to acquire arms. App. M at 27. This is undoubtedly correct, and Defendant does not dispute that holding in his motion. As in *Bruen*, nothing in the plain text suggests that the Plaintiffs' conduct is not covered. In other words, nothing in the text of the Second Amendment draws a "below 21" – "21 and above" distinction with respect to the right to keep and bear arms. Therefore, the district court was certainly correct when it held Plaintiffs have met their burden under the "plain text" analysis. App. M at 28.

**D.** **Defendant Failed to Justify SB23-169 by Demonstrating That it is Consistent with the Nation's Historical Tradition of Firearm Regulation**

The district court engaged in lengthy and careful evaluation of Defendant's arguments under *Bruen's* "historical tradition" step (App. M at 31-40) and held that Defendant failed to meet his burden to demonstrate that SB23-169 is consistent with the Nation's historical tradition of firearms regulation. App. M at 40. This is surly correct.

Defendant argues that the term "the people" in the Second Amendment applies only to some of the people in the United States and that the terms specifically does not include 18-to-20-year-old people. Mot. 10-11. This is directly counter to *Heller*, where the Court held that "'the people' … refers to all members of the political community, not an unspecified subset." *Id.* 554 U.S. at 580. Therefore, "the Second Amendment right … belongs to all Americans." 554 U.S. at 581.

In *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023), the Third Circuit held that *Bruen* did not alter *Heller's* conception of the phrase. *Id.*, 69 F.4th at 101. To be sure, the

14

legislature may constitutionally strip some people of their Second Amendment rights, but this does not mean they were not among "the people" in the first place. *Id*. In other words, "'all people have the right to keep and bear arms,' though the legislature may constitutionally 'strip certain groups of that right.'" *Id*. 69 F.4th at 102 (*quoting Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (Barrett, J., dissenting).

In *Firearms Policy Coalition, Inc. v. McCraw*, 623 F. Supp. 3d 740, 748 (N.D. Tex. 2022), the court held that 18-to-20-year-olds are part of "the people" under the Second Amendment. The court noted that when the Framers intended to include an age restriction they did so explicitly. *Id*., 623 F. Supp. 3d at 748 (*citing,* e.g., Section 2 of Article I which requires members of the House of Representatives be at least 25 years old). The absence of such a restriction in the Second Amendment is notable. *Id*. The court also observed that the First and Fourth Amendments (which protect "the people") extend their protections to 18-to-20-year-olds. *Id*. Finally, the court reasoned that, because *Heller* interpreted the prefatory clause of the Second Amendment to announce that the purpose of the

15

Amendment is to "prevent elimination of the militia" and because 18-to-20-year-olds could be required to join a militia, "[i]t would be illogical to enumerate a constitutional right to keep and bear arms to maintain an armed militia if that right did not protect those individuals from whom a militia would be drawn." *Id*. at 749-50 (*quoting Heller*, 554 U.S. at 599).

Defendant argues that because 18-to-20-year-olds were considered minors in the Founding era they did not have constitutional rights. Mot. 11. But surely this is a *non sequitur* because the Bill of Rights protects minors. *See, e.g., Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506, (1969) (First Amendment protects minors' free speech); *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (free exercise); *New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985) (Fourth Amendment). The district court correctly rejected Defendant's argument (App. M at 25) because it sidesteps the *Bruen* historical inquiry. The issue is not whether 18-to-20-year-olds were minors. The issue is whether there is a historical tradition analogous to SB23-

169's total ban on purchase of arms by 18-to-20-year-olds. *Bruen*, 142 S. Ct. at 2130. There is not.

Indeed, far from prohibiting 18-to-20-year-olds from acquiring arms in the Founding era, they were affirmatively *required* to acquire them. All able-bodied men 18 and over were required by the 1792 Militia Act to be available for service, and militia members were required to furnish their own weapons; therefore, eighteen year olds must have been allowed to "keep" firearms for personal use. *Nat'l Rifle Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 714 F.3d 334, 339 (5th Cir. 2013) (Jones, J., dissenting from denial of rehearing en banc). Thus, while the age of majority was twenty-one during the Founding era, minors were nevertheless in the militia and were expected, if not required, to provide their own firearms.

At the very least, the militia laws requiring 18-to-20-year-olds to acquire firearms conclusively demonstrate that there was no historical tradition of restricting them from acquiring firearms. Defendant all but concedes that he is unable to point to any such laws. Mot. 11 (apparently conceding an "absence of Founding era

regulations"). This is unsurprising because there were none. *See Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 2023 WL 3355339, at \*19 (E.D. Va. May 10, 2023) (government has no evidence of age-based restrictions on the purchase or sale of firearms from the colonial era, Founding, or Early Republic).

The State nevertheless stretches to find analogous regulations by pointing to the fact that certain colleges prohibited firearms on their premises. Mot. 15. Under *Bruen*, the relevant inquiry is into historical governmental regulations, not the rules of institutions, which obviously have more latitude regarding conduct on their premises than the government has in the general exercise of its police powers. Thus, these proposed regulations are not analogous because they are not regulations in the relevant sense at all. None "appears to be the product of a legislative body elected by founding-era voters." *Worth v. Harrington*, 2023 WL 2745673, at \*13 (D. Minn. Mar. 31, 2023). The district court correctly concluded that these rules were more comparable to "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings," *Bruen*, 142 S. Ct. at 2118,

than a prohibition on purchasing firearms applicable to a category of people. App. M at 35. See also *Fraser*, *supra*, at *20 ("universities' regulations limiting the ability of students to carry firearms on campus are not 'analogous' to the wholesale prohibition on 18-to-20-year-olds from purchasing firearms").

In addition, these college rules applied to only a tiny fraction of the population. In 1789, there were approximately 1,000 students enrolled in higher education in the United State out of a total population of 3.8 million. Arthur M. Cohen and Carrie B. Kisker, *The Shaping of American Higher Education: Emergence and Growth of the Contemporary System*, 14 (2d ed. 2010). The State's burden is to demonstrate an "enduring" and "broad" "American tradition of state regulation." *Bruen*, 142 S. Ct. at 2155-56. It is unclear why the State believes school rules that affected less than 0.03% of the population reflect a broad tradition of firearm regulation in the country. Such "localized restrictions" do not establish a tradition of "broadly prohibiting" 18-to-20-year-olds from acquiring firearms. *Id.*, 142 S. Ct. at 2138, 2154.

Next, Defendant pointed to several restrictions on the use of firearms by minors after the Founding era. Mot. 16. These include: (1) a law from New York City in 1803 that held parents liable for the unlawful discharge of firearms by minors (App. I at 8-9); (2) laws from cities in Delaware in 1812, South Carolina in 1817, and Connecticut in 1835 that similarly imposed liability on parents for unlawful discharge of firearms by minors (App. I at 9); (3) laws passed in Kentucky in 1853, 1859, and 1860 that penalized selling gunpowder to those under fifteen without parental consent and selling certain weapons including pistols to minors and to any "slave, or free negro" (App. I at 8-9; (4) a law from Alabama in 1856 that fined "anyone who sold, gave or lent a pistol or fighting knife to a minor," (App. I at 9 *citing* 856 Ala. Acts 17, To Amend the Criminal Law, §1); and (5) a law from Tennessee in 1858 "prohibiting selling, giving, or lending to a minor a pistol, fighting knife or 'like dangerous weapon.'" App. I at 9.

The first two categories are not restrictions on acquisition or possession. They regulate the discharge of firearms by the general population and shift liability to parents for minors' tortious use of

firearms. Thus, they are in no way analogous to a total ban on acquisition of firearms.  As for the last three laws, the court in *Fraser* stated:

> Thus, by the eve of the Civil War, *only three states* had passed any form of restrictions on the ability of minors to purchase firearms and each of these was passed 65 years or more after the ratification of the Second Amendment. This legislation therefore tells us nothing about the Founders' understanding of the Second Amendment.

*Id*. at *21 (citations omitted; emphasis added). Three late isolated laws do not establish a "broad" national tradition. *Bruen*, 142 S. Ct. at 2142. Moreover, without any confirmation in the form of founding era regulations, the district court properly did not consider three pre-Civil War regulations as strong evidence of the "public understanding of the right to keep and bear arms" at the time the Second Amendment was ratified. *Bruen*, 142 S. Ct. at 2139. In summary, like the ATF in *Fraser*, Defendant was unable to identify any Founding era analogues to SB23-169, and therefore failed to carry its burden under *Bruen's* historical analysis.

### E.    Late 19th Century Evidence Cannot Vary Clear Founding Era Evidence

Having failed to identify any Founding era regulations analogous to SB23-169, Defendant retreats and argues that certain contradictory post-Civil War regulations will do. Mot. 17. The district court properly gave "little weight" to this evidence. App. M at 40.[3] The district court's rejection of these later laws is consistent with *Bruen*, where the Court noted that "not all history is created equal. 'Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them.*'" *Id.*, 142 S.Ct at 2136, *citing Heller*, 554 U.S. at 634- 35 (emphasis in the original). The Court cautioned against "giving postenactment history more weight than it can rightly bear." *Id.*, 142 S.Ct. at 2136. And "to the extent later history contradicts what the text says, the text controls." *Id.*, 142 S.Ct. at 2137 (citation omitted). Nevertheless, the Governor insists that Reconstruction laws at odds with the Founding era tradition are

---

[3] Not only are these laws too late in time, but they are also not truly analogous to SB23-169. See the district court's discussion at App. M at 39.

22

"highly relevant" to the Second Amendment analysis. Mot. 17. But *Bruen* and *Heller* held the opposite: "[B]ecause post-Civil War discussions of the right to keep and bear arms 'took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources.'" *Bruen*, 142 S. Ct. 2137 (*quoting Heller*, 554 U.S. at 614). The Court expressed this concept even more forcefully in *Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246, 2257–2258 (2020), where it held that laws enacted in the second half of the 1800s – even if enacted by the overwhelming majority of states – are not relevant to the "history and tradition" inquiry regarding the scope of a provision of the Bill of Rights.

A second problem with Defendant's approach is that it leads to results that directly conflict with *Bruen's* admonition "that individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government." *Id*. 142 S. Ct. at 2137. There is absolutely no support for the age restriction in the Founding era. Defendant relies on laws enacted around after

23

the 14th Amendment was ratified. This conflicts with *Bruen* because under Defendant's approach, the Second Amendment could mean one thing when applied to federal laws (apply the Founding era tradition) and the opposite thing when applied to state laws (based on a purported Reconstruction era tradition).

## F. Under Bruen, There Are No "Presumptively Lawful" Burdens on the Second Amendment

The State argues SB23-169 is "presumptively lawful" because it imposes "conditions and qualifications on the commercial sale of arms." Mot.12, *quoting District of Columbia v. Heller*, 554 U.S. 570, 626–27, n.26 (2008). *Heller's* "presumptively lawful" language must, however, be read in light of *Bruen*, which clarifies the test for assessing all Second Amendment claims. No part of that test involves presuming lawfulness. *See Bruen*, 142 S. Ct. at 2126, 2130. Instead, once the plain text is implicated, it is the Government's burden to justify the law, not Plaintiffs' burden to undermine it. That does not mean *Bruen* altered *Heller*. *Bruen* simply made clear that *Heller* was only stating that it presumed restrictions of the type it listed would be found lawful to some extent when the proper

analysis was conducted. This does not mean the analysis need not be conducted at all.

Furthermore, SB23-169 is not a commercial sale regulation of the sort contemplated by *Heller*. SB23-169 makes it unlawful for 18-20-year-olds to *purchase* arms. C.R.S. §18-12-112(2)(f). As the Fourth Circuit, has noted, "[a] condition or qualification on the sale of arms is a hoop someone must jump through to sell a gun . . . Here, though, the restrictions operate as a total ban on buying a gun." *Hirschfeld v. BATFE*, 5 F.4th 407, 416 (4th Cir. 2021), *vacated as moot*, 34 F.4th 14 F.4th 322. Thus, the State's attempt to conflate the purchase of an arm by a law-abiding adult with the commercial sale of an arm by a business fails, and the district court properly rejected it. App. M at 29-31.

## III.    Plaintiffs Have Suffered Irreparable Harm

Defendant argues Plaintiffs have suffered no injury at all, much less an irreparable injury, because they could have exercised their constitutional rights before the State made it a criminal offense to do so. Mot. 19. Defendant cites no authority for the proposition that a party suffers no harm when a law deprives him

25

of his constitutional rights because he could have exercised those rights before the State made doing so a crime. Instead, violation of constitutional rights per se constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) (loss of constitutional freedom "for even minimal periods of time" unquestionably constitutes irreparable injury). "Most courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805 (10th Cir. 2019). *See also Aposhian v. Barr*, 958 F.3d 969, 990 (10th Cir. 2020) (collecting cases). "What makes an injury irreparable is the inadequacy of, and the difficulty of calculating, a monetary remedy after a full trial. *Any deprivation of any constitutional right* fits that bill." *Free the Nipple-Fort Collins*, 916 F.3d at 806 (internal citation and quotation marks omitted; emphasis added). *See also Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (applying same principle in Second Amendment context).

## IV. The Balance of Harms and Public Interest Factors Do Not Support a Stay

Finally, Defendant argues that the balance of harms and public interest factors[4] require this Court to enter a stay. Mot. 19-21. Defendant bases this argument almost exclusively on his assertion that public safety might be increased if SB23-169 were allowed to go into effect. *Id.* This is not the law. "While the public has an interest in enforcing laws that promote safety or welfare, the public has no cognizable interest in enforcing laws that are unconstitutional. Indeed, the public interest is best served by preventing an unconstitutional enforcement." *Midwest Title Loans, Inc. v. Ripley*, 616 F. Supp. 2d 897, 908 (S.D. Ind. 2009), *aff'd sub nom. Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660 (7th Cir. 2010) (cleaned up) (*citing Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003)).

In *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010), this Court held that when applying these factors courts must be mindful that even if a state is pursuing a legitimate

---

[4] These factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

goal (in that case deterring illegal immigration), it has no interest in doing so by unconstitutional means, because a state "does not have an interest in enforcing a law that is likely constitutionally infirm." *Id*. "Moreover, the public interest will perforce be served by enjoining the enforcement of the invalid provisions of state law." *Id*. (internal quotation marks and citation omitted). *See also Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1076 (10th Cir. 2001) (public interest favors preliminarily enjoining state statutes likely to be held unconstitutional).

## VII.  Conclusion

For the foregoing reasons, Plaintiffs Mosgrove and Pineda respectfully request the Court to deny Defendant's motion for stay pending appeal.

Respectfully submitted this 24th day of August 2023.

*/s/ Barry K. Arrington*

_____

Barry K. Arrington

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2023, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via email counsel of record:

*/s/ Barry K. Arrington*

_____
Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
(303) 205-7870
barry@arringtonpc.com

## WORD COUNT AND TYPEFACE

1. This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because

     this motion contains 5,154 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

     this brief has been prepared in a proportionally spaced typeface (fourteen-point Century Schoolbook) using Microsoft Word.

Date: August ____, 2023.

*/s/ Barry K. Arrington*

_____

Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
(303) 205-7870
barry@arringtonpc.com