23-1251

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | |
|---|---|
| JARED POLIS, in his official capacity as Governor of the State of Colorado,<br><br>    Defendant - Appellant,<br><br>v.<br><br>ROCKY MOUNTAIN GUN OWNERS, TATE MOSGROVE, and ADRIAN S. PINEDA,<br><br>    Plaintiffs - Appellees. | |

On Appeal from the United States District Court, District of Colorado
The Honorable Phillip A. Brimmer
Chief District Judge

District Court Case No. 23-cv-01077-PAB

**REPLY IN SUPPORT OF GOVERNOR POLIS'S EMERGENCY MOTION TO STAY THE DISTRICT COURT'S PRELIMINARY INJUNCTION PENDING APPEAL**

| | |
|---|---|
| PHILIP J. WEISER<br>Attorney General<br>GRANT T. SULLIVAN*<br>Assistant Solicitor General<br>MICHAEL T. KOTLARCZYK *<br>Senior Assistant Attorney General<br>MATTHEW J. WORTHINGTON*<br>Assistant Attorney General | Colorado Department of Law<br>1300 Broadway, 6th Floor<br>Denver, Colorado 80203<br>Telephone: 720-508-6349<br>E-Mail: grant.sullivan@coag.gov;<br>mike.kotlarczyk@coag.gov;<br>matt.worthington@coag.gov<br>*Counsel of Record<br>*Attorneys for Governor Polis* |

# TABLE OF CONTENTS

ARGUMENT ................................................................................................................ 2

    I.      Plaintiffs failed to clearly establish an injury-in-fact supporting their standing. 2

    II.     The Governor is likely to succeed on the merits of his appeal. ......................... 2

        A.  History is highly relevant at both steps of *Bruen*. ........................................ 2

        B.  Plaintiffs' request to nullify *Heller*'s category of presumptively lawful regulations should be rejected. ................................................................... 6

        C.  Plaintiffs repeat the same errors committed by the district court under *Bruen*'s second step. ...................................................................................... 7

        D.  The district court erred by failing to reason-by-analogy from the Governor's Founding-era analogues. ............................................................................. 8

    III.    The remaining factors support staying the preliminary injunction. .................. 11

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Dist. of Columbia v. Heller*,
　554 U.S. 570 (2008) ................................................................. 3, 4, 6, 7, 8

*Firearms Pol'y Coal. v. McCraw*,
　623 F. Supp. 3d 740 (N.D. Tex. 2022) ............................................... 1, 8

*Morse v. Frederick*,
　551 U.S. 393 (2007) .................................................................................. 4

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*
　142 S. Ct. .......................................................................................... passim

*Tex. All. for Retired Ams. v. Hughs*,
　976 F.3d 564 (5th Cir. 2020) ................................................................... 2

*Tinker v. Des Moines Indep. Comm. Sch. Dist.*,
　393 U.S. 503 (1969) .................................................................................. 5

*United States v. Daniels*,
　2023 WL 5091317 (5th Cir. 2023) ........................................................... 6

*United States v. Prince*,
　635 F. Supp. 3d 455 (S.D. W. Va. 2022) ................................................. 7

*Worth v. Jacobson*,
　2023 WL 3052730 (D. Minn. Apr. 24, 2023) ........................................... 1

**STATUTES**

§ 2-4-401(6), C.R.S. ........................................................................................ 5

**CONSTITUTION**

U.S. Const., amend. I ..................................................................................... 5

U.S. Const., amend. II ............................................................... 1, 2, 4, 5, 8, 11

U.S. Const., amend. XIV ............................................................................... 8

**OTHER AUTHORITIES**

S.B. 23-169, 1st Reg. Sess., 74th Colo. Gen. Assemb. ............................. 2, 7, 9, 10, 11

Contrary to Plaintiffs' arguments, a stay of the district court's preliminary injunction is strongly merited. Other courts evaluating similar age-based restrictions have not hesitated to grant stays of injunctions pending appellate review, recognizing the State is likely to prevail on the "substantial, difficult, and novel legal issues" raised under *Bruen*. *Worth v. Jacobson*, 2023 WL 3052730, *3 (D. Minn. Apr. 24, 2023); *see Firearms Pol'y Coal. v. McCraw*, 623 F.Supp.3d 740, 757 (N.D. Tex. 2022).

These courts granted stays for the same reasons the Governor urges here. They candidly acknowledge other courts may differ on whether "the people" protected by the Second Amendment "extend[s] historically to those whom the law considered minors or 'infants.'" *Worth*, *2. They also recognize that ascertaining whether a law qualifies as a "relevantly similar historical analog" is "not a straightforward endeavor," *id.*, and an appellate court may well disagree regarding "how closely a valid regulation must hew to its predecessor" to pass constitutional muster. *McCraw*, at 757. Because *Bruen* leaves courts "without fully formed answers" on these questions, *id.*, the preliminary injunction should be stayed pending this Court's review.

1

# ARGUMENT

**I.  Plaintiffs failed to clearly establish an injury-in-fact supporting their standing.**

Plaintiffs incorrectly attempt to lower their burden to establish standing at the preliminary injunction stage. When evaluating standing at the preliminary injunction stage, courts must be careful not to conflate the "minimal showing" needed to overcome a motion to dismiss with the "clear showing" of standing required to receive a preliminary injunction. *Tex. All. for Retired Ams. v. Hughs*, 976 F.3d 564, 567 n.1 (5th Cir. 2020).

The record is devoid of evidence on concrete plans the individual Plaintiffs have to buy firearms, where and when they intend to purchase firearms, the types of firearms they intend to purchase, whether they were able to purchase firearms in the 101 days between their filing this lawsuit and SB23-169's effective date, whether they already own firearms, and whether they turned 21 in the two months between signing their declarations and SB23-169 taking effect. Without more concrete facts clearly showing their standing, Plaintiffs failed to carry their burden.

**II.  The Governor is likely to succeed on the merits of his appeal.**

    **A.  History is highly relevant at both steps of *Bruen*.**

On the merits, Plaintiffs first contend *Bruen*'s initial "plain text" step involves no historical inquiry. Plaintiffs argue courts cannot consider historical understandings of the Second Amendment's text at *Bruen*'s first step and, thus, they were not obligated to present historical evidence.

2

But *Heller* was clear that courts interpret the Constitution's text by interpreting the words as "known to ordinary citizens in the founding generation." *Dist. of Columbia v. Heller*, 554 U.S. 570, 577 (2008). *Heller* called this a "textual analysis," *id.* at 578, but of course consulted a bevy of historical sources to ascertain the public's understanding. To name just a few, *Heller*'s textual analysis included: 18th- and 19th-century dictionaries; 18th- and 19th-century state constitutional provisions and statutes; records of the Continental Congress; 19th-century state court decisions; 18th- and 19th-century legal treatises and commentaries; the Federalist Papers and other Founders' writings; the 1788 ratification debates; 17th- and 18th-century English statutes and compilations; 18th-century newspaper articles and magazines; and 18th-century debates in the British Parliament. 554 U.S. at 580-600.

Each of these historical sources is discussed in section II.A of *Heller*. Section II.A focuses on the amendment's text, as shown by its further division into subsections corresponding to the amendment's different textual phrases. The Court's lengthy discussion of the public's historical understanding in section II.A confirms that history is indispensable to analyzing constitutional text.

*Bruen* endorsed *Heller*'s approach. The Court explained lower courts must rely "on history to inform the meaning of constitutional text." 142 S. Ct. at 2130. Plaintiffs are thus incorrect that courts do not consider historical evidence when first interpreting the text. Instead, *Bruen* requires courts consider history at both steps. If the plaintiff first

shows the amendment's text, as informed by history, covers their conduct, then the burden shifts to the government to show its regulation is consistent with the Nation's historical tradition.[1]

Plaintiffs also assert the Founders knew how to insert age-based restrictions into the Constitution when they meant to. But this argument proves too much. It ignores that the Second Amendment contains *no* explicit age threshold, leaving it up to the States to decide the appropriate age to purchase firearms. Plaintiffs have never argued *all* persons enjoy rights under the amendment. Nor could they. Just as a six-year-old at the Founding was not understood to enjoy the right to keep and bear arms, minors under 21 similarly lacked the right.

Plaintiffs argued below the court should instead look to "the generally recognized age of majority as established in a state *at the time of the Court's inquiry*." App. D at 10. Plaintiffs again cite to 20th-century history to argue the text covers 18-to-20-year-olds.[2]

---

[1] Plaintiffs argue *Bruen* devoted only four paragraphs to its first-step analysis, none of which relied on history. But *Bruen* relied extensively on *Heller*'s prior textual analysis of public carry that was grounded in history. 142 S. Ct. at 2134-35. And the State in *Bruen* "conced[ed]" that the amendment's text guarantees a right to public carry, rendering it unnecessary for the Court to undertake a lengthy step-one analysis. *Id.* at 2135.

[2] Plaintiffs rely on three 20th-century cases dealing with public school students to broadly argue that minors hold constitutional rights. Resp. 16. But those cases do not involve the Second Amendment. Moreover, contrary to *Bruen*, none of those cases analyzes whether minors held constitutional rights when the Constitution was adopted. *Morse v. Frederick*, 551 U.S. 393, 418-19 (2007) (Thomas, J., concurring) (criticizing

This argument fails for two reasons. First, 21 is the general age of majority in Colorado, not 18. § 2-4-401(6), C.R.S. Second, Plaintiffs' interpretive method is logically inconsistent. Plaintiffs demand the Court look only to the Founding era when interpreting the scope of Second Amendment's "keep and bear Arms" phrase but then insist the Court look to 21st-century understandings of what is meant by "the people."

Plaintiffs' position makes *Bruen* an unworkable test. The State must show a Founding-era restriction on the right when Plaintiffs can only argue the right originated in the mid-20th century. Meanwhile, the State's evidence of widespread restrictions on those under 21 in the 1870s purportedly comes "too late," despite predating Plaintiffs' history by 100 years.

Contrary to Plaintiffs' unworkable approach, history matters at both of *Bruen*'s steps. Plaintiffs have the initial burden of demonstrating their conduct was covered by the "*public understanding*" of the amendment's text at or after its ratification. 142 S. Ct. at 2128. This requires Plaintiffs to bring forth evidence that the amendment's words covered minors' conduct in the 18th and 19th centuries. Otherwise, the State would illogically be required to show a historic restriction at step two before the right has even been established at step one.

---

*Tinker* and stating it contravenes how the First Amendment was "originally understood" and the "history of American public education").

Here, although the Governor carried no burden at step one,[3] he presented robust expert testimony from renowned historians to explain 18-to-20-year-olds' status as minors without full legal rights. App. H, I. They explained that "[d]uring the Revolutionary and Founding eras (1776-1799), minors or 'infants' (those below the age of twenty-one, which was the age of legal majority at the time) were not independent legal actors claiming the full panoply of rights, including the right to keep and bear arms." App. H at 4. This testimony is unrebutted.[4] Plaintiffs offered no historical evidence suggesting 18-to-20-year-olds held the right to keep and bears. *United States v. Daniels*, 2023 WL 5091317, *19 (5th Cir. 2023) (Higginson, J., concurring) (*Bruen* requires an "evidentiary inquiry" be conducted "in courts of original jurisdiction, subject to party presentation principles, aided by discovery and cross-examination and without authority to solicit expert opinion").

### B. Plaintiffs' request to nullify *Heller*'s category of presumptively lawful regulations should be rejected.

Plaintiffs next contend that, after *Bruen*, there are no presumptively lawful firearm regulations. *Bruen* disproves this argument. The Court recognized firearm restrictions in "sensitive places" was one category of presumptively lawful restrictions announced in

---

[3] Plaintiffs do not dispute they carry the burden at *Bruen*'s first step.

[4] Plaintiffs assert 18-to-20-year-olds held rights under the amendment because they were required to provide their own firearms for militia service. But this contradicts the only evidence in the record. App. H at 37. The district court similarly rejected Plaintiffs' argument. App. M at 36.

*Heller*. 142 S. Ct. at 2133. It continued to uphold the "lawfulness of such prohibitions," even though the historical record revealed "few" such sensitive places. *Id.* This analysis confirms *Heller*'s "presumptively lawful" category survives after *Bruen* and that such regulations need not undergo *Bruen*'s two-step analysis. *United States v. Prince*, 635 F.Supp.3d 455, 466 (S.D. W.Va. 2022) (finding it unnecessary to engage in *Bruen*'s historical analysis because it "left generally undisturbed" the presumptively lawful category).

Plaintiffs also inaccurately describe what SB23-169 reaches, suggesting it regulates only 18-to-20-year-olds' ability to *purchase* firearms. That is wrong. Colorado's new law is also a commercial regulation on the *sale* of firearms. It prevents licensed gun dealers and private sellers from "mak[ing] or facilitat[ing] the sale" of a firearm to anyone under 21. App. A, §§2-3. Following *Heller*'s carve-out, multiple courts have upheld similar commercial age-based regulations. Motion, 12-13. Plaintiffs fail to rebut these cases.

> **C.    Plaintiffs repeat the same errors committed by the district court under *Bruen*'s second step.**

Plaintiffs also repeat the district court's error by demanding Colorado identify a Founding-era "dead ringer" rather than a relevantly similar analogue. First, Plaintiffs argue historical sales restrictions in the 19th century that were nearly identical to SB23-169 and adopted by nearly 20 states came "too late in time." Resp. 22. But Plaintiffs' own arguments show why Reconstruction-era history is relevant. They argue

7

constitutional rights are "enshrined with the scope they were understood to have *when the people adopted them*." Resp. 22. Colorado agrees. Colorado adopted the Fourteenth Amendment (and thus the Second Amendment) in 1876. History from this period is thus critical to understanding the constitutionality of Colorado's gun law. Indeed, both *Heller* and *Bruen* considered 19th-century history.

Plaintiffs nonetheless argue 19th century evidence "cannot vary" clear Founding-era evidence. Resp. 22. But Plaintiffs presented no Founding-era evidence. The Governor was the only party to submit any Founding-era evidence, which demonstrated the amendment was not understood to create a right for those under 21. Thus, no contradiction exists. Plaintiffs cannot simply ignore 19th-century laws "enacted by the overwhelming majority of states," Resp. 23, by asserting without evidence that these laws contradict some earlier understanding that Plaintiffs have not established. At best, Plaintiffs' argument shows reasonable minds may harbor "different interpretations" regarding how to utilize Reconstruction-era history. *McCraw*, 623 F.Supp.3d at 757. This counsels in favor of, not against, a stay of the preliminary injunction. *Id.*

**D.    The district court erred by failing to reason-by-analogy from the Governor's Founding-era analogues.**

The district court also failed to consider how the 19th-century sales restrictions were *consistent* with earlier historical analogues. Plaintiffs' arguments, which the district court adopted, misunderstand *Bruen*'s requirement that courts "reason[] by analogy." 142

S. Ct. at 2132. In reasoning by analogy, courts must consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133.

First, the "how." The historical analogues identified by the Governor restrict minors' self-defense in much the same way SB23-169 restricts the right—they reduce the channels through which minors can lawfully use and possess firearms. Early college restrictions, for example, prohibited students from possessing firearms on campus. Professor Spitzer identified early college firearm restrictions at 22 institutions across 19 States. App. I at 62-67. This is far more than a mere "localized" restriction. Plaintiffs argue college restrictions only applied to a small population but ignore the Governor's evidence that early colleges were the lone exception to direct parental authority for those under 21. App. H at 27. Likewise, the Founding-era laws from New York City, Delaware, South Carolina, and Connecticut prohibited minors from discharging firearms within certain municipal boundaries—again reducing but not eliminating minors' opportunities to use and possess firearms. Even if these restrictions were not "dead-ringers," they demonstrate a clear public understating that States could restrict minors' access and use, consistent with the rise of widespread sales restrictions most similar to SB23-169 in the 19th century. App. I at 8-9, 21-61.

The same "how" applies to SB23-169. It reduces, but does not eliminate, the channels through which an 18-to-20-year-old can lawfully use and possess firearms. While commercial and private sales are now off the table, an 18-to-20-year-old can still

use and possess firearms they borrow, inherit, or receive as a gift, as well as firearms they purchased before SB23-169's effective date. They may also purchase a firearm if they are a member of the Armed Forces, a peace officer, or P.O.S.T. Board-certified. App. A, §§2-3. Thus, the "how" behind SB23-169 is relevantly similar to the Governor's historical analogues.

Next, the "why." The Governor's evidence established SB23-169 restricts 18-to-20-year-olds' opportunities to use and possess firearms because many minors under 21 have not yet matured into full-fledged adults capable of acting responsibly with firearms. Dr. Steinberg testified 18-to-20-year-olds are more prone to engage in dangerous behavior with firearms because their brains are still developing. App. L at 5. This "psychological and neurobiological immaturity" renders them "inherently riskier" than adults with fully developed brains. *Id.* at 6.

The same concerns over the psychological immaturity of 18-to-20-year-olds animated the Founding- and Reconstruction-eras restrictions. Twenty-one was the age of majority in most states in the 18th and 19th centuries. App. I at 11. Those under 21 could keep and bear arms only in "supervised situations" under the direction of those who held legal authority over them. App. H at 29. Even for those 18-to-20-year-olds who attended college outside of their parents' direct supervision, the college itself acted as a parental substitute. *Id.* at 27.

Accordingly, the "why" behind early historical restrictions on minors' use and possession of firearms is sufficiently analogous to SB23-169. Were the district court's more rigid approach adopted, the States would be left powerless to address "unprecedented societal concerns" related to firearms. *Bruen*, 142 S. Ct. at 2132.

## III. The remaining factors support staying the preliminary injunction.

Plaintiffs fail to establish that the remaining stay factors tilt in their favor. They do not dispute, for example, that Colorado suffers irreparable harm "[a]ny time" it is enjoined from effectuating a statute enacted by its elected representatives. Motion, 19. Nor do Plaintiffs rebut the Governor's showing that firearms are now the leading cause of death among 18-to-20-year-olds. Colorado will thus indisputably suffer irreparable harm absent a stay.

By contrast, Plaintiffs identify no concrete, irreparable harm they will incur if a stay is granted. Nowhere in their response do they assert they are *currently* without firearms for self-defense. Nor do they allege any specific plans to purchase particular firearms. Plaintiffs instead argue their harm is presumed because, in their view, SB23-169 is unconstitutional. But as already shown, Colorado's law comports with the Second Amendment. Plaintiffs have thus not made the clear showing needed to establish irreparable harm.

The public interest also strongly supports a stay. As the Governor has shown, more and more 18-to-20-year-olds will continue to purchase firearms each day SB23-169 remains enjoined. Risk taking, impulsiveness, and reckless behavior peak in this age

range due to ongoing brain development. Absent a stay, the public interest will be detrimentally harmed by exposing this group (and the public at large) to further gun violence.

Dated: August 28, 2023

PHILIP J. WEISER
Attorney General

*s/ Grant T. Sullivan*
*Grant T. Sullivan*, Assistant Solicitor General\*
*Michael T. Kotlarczyk,* Senior Assistant Attorney General\*
*Matthew J. Worthington*, Assistant Attorney General\*
1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: (720) 508-6349
Email: grant.sullivan@coag.gov;
mike.kotlarczyk@coag.gov; matt.worthington@coag.gov
*Attorneys for Governor Jared Polis*
\*Counsel of Record

## CERTIFICATE OF SERVICE

      I hereby certify that on August 28, 2023, I served a true and complete copy of the foregoing **REPLY IN SUPPORT OF GOVERNOR POLIS'S EMERGENCY MOTION TO STAY THE DISTRICT COURT'S PRELIMINARY INJUNCTION PENDING APPEAL** upon all parties herein by e-filing with the CM/ECF system maintained by the court and/or email, addressed as follows:

Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
Voice: (303) 205-7870
Email: barry@arringtonpc.com

*Attorney for Plaintiffs*

                                                      *s/ Carmen Van Pelt*
                                                      Carmen Van Pelt

**WORD COUNT AND TYPEFACE**

1. This reply complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because

>   this Reply contains 2,600 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

>   this brief has been prepared in a proportionally spaced typeface (thirteen-point Times New Roman) using Microsoft Word.

Date: August 28, 2023.

>   *s/ Grant T. Sullivan*
>   GRANT T. SULLIVAN
>   Assistant Solicitor General