No. 23-1251

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

ROCKY MOUNTAIN GUN OWNERS,
TATE MOSGROVE, and ADRIAN S. PINEDA,

Plaintiffs-Appellees,

v.

JARED S. POLIS, IN HIS OFFICIAL CAPACITY AS
GOVERNOR OF THE STATE OF COLORADO,

Defendant-Appellant.

_____

On Appeal from the United States District Court
for the District of Colorado (No. 23-cv-1077-PAB)

The Honorable Chief Judge Phillip A. Brimmer

## BRIEF OF AMICI CURIAE ILLINOIS, ARIZONA, CALIFORNIA, CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA, HAWAII, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW YORK, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, AND WASHINGTON IN SUPPORT OF DEFENDANT-APPELLANT AND REVERSAL

ALEX HEMMER
Deputy Solicitor General
JOHN R. MILLIGAN
Assistant Attorney General
100 West Randolph Street
Chicago, Illinois 60601
(312) 814-5526
alex.hemmer@ilag.gov

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

Attorneys for Amici States

*(Additional counsel on signature page)*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..........................................................................ii

IDENTITY AND INTEREST OF AMICI STATES ...................................1

SUMMARY OF ARGUMENT ....................................................................2

ARGUMENT ...............................................................................................5

I.    The Second Amendment Allows States To Enact Measures To
Promote Gun Safety And Protect Against Gun Violence That Are
Consistent With Historical Tradition. ..............................................5

II.   Colorado's Age-Based Regulation Is Consistent With Measures
Taken By Other States And Upheld On Historical Grounds By
Courts Across The Country. ...........................................................10

III.  The District Court Erred In Finding The Challenged Statute
Unconstitutional ..............................................................................16

CONCLUSION ..........................................................................................20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*District of Columbia v. Heller,*
   554 U.S. 570 (2008) .............................................................. 6, 9, 14, 18

*Hirschfeld v. ATF,*
   5 F.4th 407 (4th Cir. 2021) .................................................... 16

*Jones v. Bonta,*
   34 F.4th 704 (9th Cir. 2022) .................................................. 16

*McDonald v. City of Chicago,*
   561 U.S. 742 (2010) .............................................................. 6, 9

*Medtronic, Inc. v. Lohr,*
   518 U.S. 470 (1996) .............................................................. 5

*National Rifle Ass'n v. ATF,*
   700 F.3d 185 (5th Cir. 2012), ................................................ 14

*National Rifle Ass'n v. Bondi,*
   61 F.4th 1317 (11th Cir. 2023) ............................................. 15

*National Rifle Ass'n, Inc. v. Swearingen,*
   545 F. Supp. 3d 1247 (N.D. Fl. 2021) .................................. 15

*New York State Rifle & Pistol Ass'n v. Bruen,*
   142 S. Ct. 2111 (2022) ............................................... *passim*

*Lara v. Evanchick,*
   534 F. Supp. 3d 478 (W.D. Pa. 2021) ................................. 15

*People v. Mosley,*
   2015 IL 115872 ..................................................................... 16

*Peterson v. Martinez,*
  707 F.3d 1197 (10th Cir. 2013) ............................................................ 1

*Powell v. Tompkins,*
  926 F. Supp. 2d 367 (D. Mass. 2013) .................................................. 15

*United States v. Lopez,*
  514 U.S. 549 (1995) .............................................................................. 5

*United States v. Morrison,*
  529 U.S. 598 (2000) .............................................................................. 5

## STATUTES AND REGULATIONS

Alaska Stat.
  § 11.61.220 ........................................................................................ 12
  § 18.65.705 ........................................................................................ 12

Ariz. Rev. Stat.
  § 13-3102 ........................................................................................... 12
  § 13-3112 ........................................................................................... 12

Ark. Code § 5-73-309 ............................................................................ 12

Cal. Penal Code
  § 26150 .......................................................................................... 11, 12
  § 26155 ............................................................................................... 12
  § 26170 ............................................................................................... 12
  § 27505 ............................................................................................... 11
  § 27510 ............................................................................................... 11

Col. Rev. Stat.
  § 18-12-112.5 ...................................................................................... 12
  § 18-12-203 ........................................................................................ 12

Conn. Gen. Stat.
  § 29-28 ............................................................................................... 12
  § 29-34 ............................................................................................... 11

§ 29-35 ........................................................................... 12
§ 29-36f .......................................................................... 13

D.C. Code Ann.
§ 7-2502.03 ............................................................... 11, 13
§ 7-205.2 ...................................................................... 11
............................................................................................
§ 7-2509.02 ................................................................... 12
§ 22-4507 ...................................................................... 11

Del. Code Ann. tit. 11, § 1448 ........................................ 12, 13

Del. Code Ann. tit. 24,
§ 903 ........................................................................... 11

Fla. Stat.
§ 790.053 ...................................................................... 11
§ 790.06 ....................................................................... 12
§ 790.065 ...................................................................... 11

Ga. Code
§ 16-11-125.1 ................................................................ 12
§ 16-11-126 ................................................................... 12
§ 16-11-129 ................................................................... 12

Haw. Rev. Stat. Ann.
§ 134-2 ................................................................... 11, 13
§ 134-9 ........................................................................ 12

430 Ill. Comp. Stat.
65/2 ............................................................................. 13
65/3 ............................................................................. 11
65/4 ....................................................................... 11, 13
66/25 ........................................................................... 12

720 Ill. Comp. Stat. 5/24-1 ............................................... 12

Iowa Code § 724.22 ..................................................... 11, 13

Ky. Rev. Stat. § 237.110 ........................................................................ 12

La. Rev. Stat. § 40:1379.3 ....................................................................... 12

Mass. Gen. Laws ch. 140,
  § 130 ................................................................................................... 11
  § 131E ................................................................................................. 11

Md. Code Ann., Pub. Safety
  § 5-101 ................................................................................................ 13
  § 5-133 ........................................................................................... 12, 13
  § 5-134 ................................................................................................ 11

Mich. Comp. Laws
  § 28.422 ............................................................................................... 11
  § 28.425b ............................................................................................. 12

Minn. Stat. § 624.714 ............................................................................. 12

Mo. Rev. Stat. § 571.080 ......................................................................... 12

Neb. Rev. Stat.
  § 69-2403 ............................................................................................. 11
  § 69-2404 ............................................................................................. 11
  § 69-2433 ............................................................................................. 12

Nev. Rev. Stat. § 202.3657 ...................................................................... 13

N.J. Stat. Ann.
  § 2C:58-3 ............................................................................................. 11
  § 2C:58-4 ............................................................................................. 12
  § 2C:58-6.1 .......................................................................................... 13

N.M. Stat. § 29-19-4 ............................................................................... 13

N.Y. Penal Law § 400.00 .............................................................. 11, 12, 13

N.C. Gen. Stat. § 14-415.121 .................................................... 13

Ohio Rev. Code Ann.
  § 2923.125 ........................................................................ 13
  § 2923.21 .......................................................................... 11

Okla. Stat. tit. 21 § 1272 ........................................................ 12

Or. Rev. Stat. § 166.291 ......................................................... 13

18 Pa. Cons. Stat. § 6109 ....................................................... 13

R.I. Gen. Laws
  § 11-47-11 ......................................................................... 12
  § 11-47-18 ......................................................................... 12
  § 11-47-35 ......................................................................... 11
  § 11-47-37 ......................................................................... 11

S.C. Code § 23-31-215 ............................................................. 12

Utah Code
  § 76-10-505 ....................................................................... 13
  § 76-10-523 ....................................................................... 13

Vt. Stat. Ann. tit. 13, § 4020 .................................................. 11

Va. Code § 18.2-308.02 .......................................................... 13

Wash. Rev. Code Ann.
  § 9.41.070 ......................................................................... 12
  § 9.41.240 .................................................................... 11, 13

Wis. Stat. § 175.60 ................................................................. 13

Wyo. Stat. § 6-8-104 ............................................................... 13

## IDENTITY AND INTEREST OF AMICI STATES

The amici States of Illinois, Arizona, California, Connecticut, Delaware, the District of Columbia, Hawaii, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and Washington submit this brief in support of Defendant-Appellant Jared S. Polis, in his official capacity as Governor of Colorado, pursuant to Federal Rule of Appellate Procedure 29(a)(2).

The amici States have a substantial interest in the public health, safety, and welfare of their communities, which includes protecting their residents from the harmful effects of gun violence and promoting the safe use of firearms. *See Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 348 (5th Cir. 2013) (States have an "important" interest in "advancing public safety by curbing violent crime"); *United States v. Bena*, 664 F.3d 1180, 1184 (8th Cir. 2011) (firearms statutes "promote the government's interest in public safety"); *see also, e.g.*, *Peterson v. Martinez*, 707 F.3d 1197, 1216 (10th Cir. 2013) (Lucero, J., concurring) (governments have "important" and "substantial" interests in ensuring "public safety"). To serve that interest, a majority of States have

historically implemented measures that regulate the sale and use of, and access to, firearms for individuals under the age of 21.  Although the States have reached different conclusions on how best to regulate in this area, they share an interest in protecting their right to address gun violence in a way that is both consistent with the Nation's historical tradition and tailored to the specific circumstances in their States. Colorado's regulation of the purchase of firearms by individuals under the age of 21 is a historically sound vindication of its interest in promoting public health and safety, and the district court's injunction interferes with this important interest.  Accordingly, the amici States urge this Court to reverse the district court's judgment.

## SUMMARY OF ARGUMENT

For over fifty years, Colorado has limited the purchase of handguns within the State to those who are at least 21 years old.  This year, in an effort to curb increased gun violence within the State and ensure responsible gun ownership, the Colorado General Assembly amended state law to apply the same standard to the sale of long guns. That decision is consistent with those made by many of Colorado's sister States, as well with as our Nation's history and tradition.

Plaintiffs challenge this restriction on the ground that it unduly infringes upon the Second Amendment rights of young people. But as the amici States set out below, the Second Amendment allows States to enact sensible public-safety regulations as long as those regulations are consistent with our Nation's historical tradition. Exercising that authority, virtually all States and the District of Columbia have imposed age-based regulations on the purchase, possession, or use of firearms within their borders, and many have maintained those laws for over 150 years. Although these regulations differ from jurisdiction to jurisdiction, 19 States and the District of Columbia have established a minimum age requirement of 21 for individuals to purchase at least some firearms, as Colorado has.

The district court's decision enjoining Colorado's statute is incorrect. The challenged statutes are comparable to regulations imposed by States on young people for over 150 years, including statutes enacted by at least 20 jurisdictions in the 1800s barring the sale of firearms to young people. Young people under the age of 21 were considered minors, not adults, from before the Founding through the latter half of the twentieth century, and thus were likely not historically

considered part of "the People" protected by the Second Amendment.
But even if people under the age of 21 fall within the textual scope of
the Second Amendment, the historical record demonstrates that States
have a rich tradition of imposing age-based regulations on firearm use
and access, making Colorado's decision to do so here historically sound.
The district court's decision to the contrary is based on several incorrect
premises, including that a State must prove that a challenged statute
falls outside of the Second Amendment's textual scope and that
historical practice after the Founding is only valid evidence insofar as it
can be directly linked to Founding-era practices.  The Supreme Court
announced no such rules in *New York State Rifle & Pistol Ass'n, Inc. v.
Bruen*, 142 S. Ct. 2111 (2022), and the district court thus erred in
multiple respects, including by failing to meaningfully consider laws
enacted in the 1800s by over 20 States, which are relevant analogues
here.  For these reasons and those explained by Colorado, the district
court's decision should be reversed.

# ARGUMENT

## I.    The Second Amendment Allows States To Enact Measures To Promote Gun Safety And Protect Against Gun Violence That Are Consistent With Historical Tradition.

The States have long exercised their police power to protect the health, safety, and welfare of their residents.  In fact, "the States possess primary authority for defining and enforcing the criminal law," *United States v. Lopez*, 514 U.S. 549, 561 n.3 (1995) (internal quotation marks omitted), and have "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons," *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996). These responsibilities include enacting measures to promote safety, prevent crime, and minimize gun violence within their borders.  *See, e.g.*, *United States v. Morrison*, 529 U.S. 598, 618 (2000) ("Indeed, we can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.").

The Supreme Court has repeatedly affirmed the States' authority in this area, even as it has defined the scope and significance of the rights conferred by the Second Amendment.  Indeed, in each of its major

Second Amendment opinions—*District of Columbia v. Heller*, 554 U.S.
570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and
*Bruen*, 142 S. Ct. 2111—the Court expressly acknowledged the
important role that States play in protecting residents from gun
violence.  This role is consistent with our Nation's historical tradition.

    To begin, in *Heller*, the Supreme Court made clear that the Second
Amendment right to keep and bear arms is "not unlimited."  554 U.S. at
626.  The Court explained that although States may not ban the
possession of handguns by responsible, law-abiding individuals or
impose similarly severe burdens on the Second Amendment right, they
still possess "a variety of tools" to combat the problem of gun violence.
*Id.* at 636.  They may, for example, implement measures prohibiting
certain groups of people from possessing firearms, such as "felons and
the mentally ill," or "impos[e] conditions and qualifications on the
commercial sale of arms."  *Id.* at 626-27.  And the Court made the same
point shortly thereafter in *McDonald*, emphasizing that the Second
Amendment "by no means eliminates" the States' "ability to devise
solutions to social problems that suit local needs and values."  561 U.S.

at 785; *see also id.* at 802 (Scalia, J., concurring) ("No fundamental right—not even the First Amendment—is absolute.").

The Supreme Court's recent decision in *Bruen* preserves the substantial authority that States retain in this area. At issue in *Bruen* was a New York statute that required all individuals, including law-abiding individuals, to show a "special need" to obtain a license to carry a handgun in public. 142 S. Ct. at 2122-24. The Court clarified that in a Second Amendment challenge to a statute restricting the possession or use of firearms, a court must ask whether the challenged statute is "consistent with the Second Amendment's text and historical understanding." *Id.* at 2131. And it held that the New York statute at issue—unlike the licensing statutes employed by 43 other States, *id.* at 2138 n.9—failed that test, insofar as it imposed restrictions on conduct that fell within the Amendment's scope and were inconsistent with historical practice. *Id.* at 2138. As the Court explained, history did not support a "tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Id.*

But the Supreme Court emphasized—even as it reached that conclusion—its intent to preserve States' substantial authority to

7

regulate the possession, sale, and use of firearms.  For one, the Court

explained, States need not demonstrate that a firearms regulation is

historically justified unless the party challenging that regulation shows

that the conduct it burdens falls within the Second Amendment's text.

*See id.* at 2129-30 (if the Second Amendment's "plain text covers an

individual's conduct . . . the government *must then* justify its

regulation" (emphasis added)); *id.* at 2141 n.11 (similar).  For another,

the Court elaborated, even once that threshold showing is met, States

can justify challenged regulations by pointing to a historical tradition of

"relevantly similar" firearms regulations—a form of "reasoning by

analogy."  *Id.* at 2132.  This approach was necessary, the Court added,

because "[t]he regulatory challenges posed by firearms today are not

always the same as those that preoccupied the Founders in 1791 or the

Reconstruction generation in 1868."  *Id.*

The historical inquiry demanded by the Second Amendment, in

other words—as the Supreme Court emphasized—is not a "regulatory

straightjacket."  *Id.* at 2133; *accord id.* ("[A]nalogical reasoning requires

only that the government identify a well-established and representative

historical *analogue*, not a historical *twin*." (emphasis in original)).  And

multiple Justices wrote separately in *Bruen* to emphasize that the States retain the authority to regulate firearms to protect the health and safety of their residents.  Justice Kavanaugh, joined by the Chief Justice, concurred to emphasize the "limits of the Court's decision" and to note that, "[p]roperly interpreted, the Second Amendment allows a variety of gun regulations."  *Id.* at 2162 (internal quotation marks omitted).  Justice Alito likewise concurred to note that *Bruen* "does not expand the categories of people who may lawfully possess a gun."  *Id.* at 2157-58.  Indeed, Justice Alito added, "federal law generally . . . bars the sale of a handgun to anyone under the age of 21," *id.*—a restriction on the right to bear arms which overlaps substantially with the statute at issue here.

Taken together, then, *Heller*, *McDonald*, and *Bruen* emphasize that States retain a substantial measure of regulatory authority over firearms, presuming they act consistent with text and history in regulating.

## II.     Colorado's Age-Based Regulation Is Consistent With Measures Taken By Other States And Upheld On Historical Grounds By Courts Across The Country.

Colorado's decision to regulate the sale of firearms to young people is well within the substantial authority that the States retain—and have exercised—in this area.  Although the States have reached different conclusions on how best to regulate selling, using, or accessing firearms—as they have historically been permitted to do, *see supra* Section I—virtually every State and the District of Columbia has determined that imposing *some* age-based limits is appropriate to promote public safety and curb gun violence within its borders.

Indeed, many States have imposed age-based restrictions that are similar to those enacted by Colorado and challenged by plaintiffs here. Nineteen States and the District of Columbia—California, Connecticut, Delaware, Florida, Hawaii, Illinois, Iowa, Massachusetts, Maryland, Michigan, Missouri, Nebraska, New Jersey, New York, Ohio, Rhode Island, Vermont, Washington, and the District of Columbia, in addition to Colorado—have chosen to limit the circumstances under which

people under the age of 21 can purchase some or all firearms.[1]  At least eight of these laws are analogous to the restrictions at issue here, in that they prohibit the sale of at least some long arms, in addition to handguns, to most people under the age of 21.[2]

Other States have adopted age-based firearms regulations in other contexts.  For instance, many States have decided that it serves the interest of public safety to limit the circumstances under which those under the age of 21 may carry firearms in public.  To that end, at least 15 jurisdictions—Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Maryland, Massachusetts, Minnesota, New Jersey,

---

[1]  Cal. Penal Code §§ 27505(a); 27510; Col. Rev. Stat. 18-12-112.5(a.5); Conn. Gen. Stat. § 29-34(b); D.C. Code Ann. § 22-4507; Del. Code Ann. tit. 24, § 903; Fla. Stat. § 790.065(13); Haw. Rev. Stat. Ann. § 134-2(a), (d), (h); 430 Ill. Comp. Stat. 65/3(a), 65/4(a)(2); Iowa Code § 724.22(2); Mass. Gen. Laws ch. 140, §§ 130, 131E(b); Md. Code Ann., Pub. Safety § 5-134(b); Mich. Comp. Laws § 28.422(3)(b), (12); Mo. Rev. Stat. § 571.080; Neb. Rev. Stat. §§ 69-2403, 69-2404; N.J. Stat. Ann. §§ 2C:58-3(c)(4), 3.3(c), 6.1(a); N.Y. Penal Law § 400.00(1), (12); Ohio Rev. Code Ann. § 2923.21(A)(2); R.I. Gen. Laws §§ 11-47-35(a)(1), 11-47-37; Vt. Stat. Ann. tit. 13, § 4020; Wash. Rev. Code Ann. § 9.41.240.

[2]  Cal. Penal Code §§ 27505, 27510; D.C. Code Ann. §§ 7-2502.03(a)(1), 7-2505.2(c), 22-4507; Del. Code Ann. tit. 24, § 903; Fla. Stat. § 790.065(13); Haw. Rev. Stat. Ann. § 134-2(a), (d), (h); 430 Ill. Comp. Stat. 65/3(a), 65/4(a)(2); Vt. Stat. Ann. tit. 13, § 4020; Wash. Rev. Code Ann. § 9.41.240.

New York, Oklahoma, Rhode Island, South Carolina, and the District of

Columbia—have concluded that people under the age of 21 should (in

some States, subject to exceptions) not be able to carry certain firearms

in public at all (that is, whether openly or concealed).[3]  At least 20

additional States—Alaska, Arizona, Arkansas, California, Colorado,

Kentucky, Louisiana, Michigan, Nebraska, Nevada, New Mexico, North

Carolina, Ohio, Oregon, Pennsylvania, Utah, Virginia, Washington,

Wisconsin, and Wyoming—have enacted statutes that bar people under

the age of 21 from carrying certain firearms in public in a concealed

manner (again, with some exceptions), but permit them to carry those

firearms openly (or, in one State, the opposite).[4]  Finally, ten States and

---

[3]  Conn. Gen. Stat. §§ 29-28(b), 29-35(a); D.C. Code § 7-2509.02(a)(1); Del. Code Ann. tit. 11, § 1448(a)(5); Fla. Stat. §§ 790.06(1), (2)(b), 790.053(1); Ga. Code §§ 16-11-125.1(2.1), 16-11-126(g)(1), 16-11-129(b)(2)(A); Haw. Rev. Stat. § 134-9(a); 430 Ill. Comp. Stat. 66/25(1); 720 Ill. Comp. Stat. 5/24-1(a)(10); Md. Public Safety Code § 5-133(d); Mass. Gen. Laws ch. 140, § 131(d)(iv); Minn. Stat. § 624.714; N.J. Stat. §§ 2C:58-3(c)(4), 2C:58-4(c); N.Y. Penal Law § 400.00(1); Okla. Stat. tit. 21 § 1272(A); R.I. Gen. Laws §§ 11-47-11, 11-47-18; S.C. Code § 23-31-215(A).  The provision of Delaware law barring people under the age of 21 from possessing certain firearms (and thus from carrying them in public) takes effect July 1, 2025.  Del. Code Ann. tit. 11, § 1448(a)(5)e.

[4]  Alaska Stat. §§ 11.61.220(a)(6), 18.65.705; Ariz. Rev. Stat. §§ 13-3102(A)(2), 13-3112(E); Ark. Code § 5-73-309; Cal. Penal Code §§ 26150, 26155, 26170 (effective Jan. 1, 2024); Colo. Rev. Stat. § 18-12-203(1)(b);

the District of Columbia have set a minimum age of 21 to possess

certain firearms in the first place (again subject, in some cases, to

exceptions).[5]  Altogether, more than 34 jurisdictions have imposed *some*

restriction on the purchase, possession, or use of firearms by people

under the age of 21.[6]

The restriction plaintiffs challenge, in other words, is hardly an

outlier; it is consistent with the way many States have elected to handle

this issue.  And courts across the country have largely upheld state laws

that regulate firearms with respect to people under the age of 21.

Importantly, many of these courts have upheld statutes like Colorado's

---

Ky. Rev. Stat. § 237.110(4)(c); La. Rev. Stat. § 40:1379.3(C)(4); Mich.
Comp. Laws § 28.425b(7)(a); Neb. Rev. Stat. § 69-2433; Nev. Rev. Stat. §
202.3657(3)(a)(1); N.M. Stat. § 29-19-4(A)(3); N.C. Gen. Stat. § 14-
415.12(a)(2); Ohio Rev. Code § 2923.125(D)(1)(b); Or. Rev. Stat.
§ 166.291(1)(b); 18 Pa. Cons. Stat. § 6109(b); Utah Code §§ 76-10-505,
76-10-523(5); Va. Code § 18.2-308.02(A); Wash. Rev. Code § 9.41.070;
Wis. Stat. § 175.60(3)(a); Wyo. Stat. § 6-8-104(a)(iv), (b)(ii).

[5]  Conn. Gen. Stat. § 29-36f; D.C. Code Ann. § 7-2502.03(a)(1); Del. Code
Ann. tit. 11, § 1448(a)(5); Haw. Rev. Stat. Ann. § 134-2(a), (d); 430 Ill.
Comp. Stat. 65/2(a)(1), 65/4(a)(2); Iowa Code § 724.22; Md. Code Ann.,
Pub. Safety §§ 5-101(r), 5-133(d); Mass. Gen. Laws ch. 140, § 131(d)(iv);
N.J. Stat. Ann. § 2C:58-6.1(b); N.Y. Penal Law § 400.00(1)(a); Wash.
Rev. Code Ann. § 9.41.240(2), (3).  This aspect of Delaware's law takes
effect on July 1, 2025.  *Supra* n.3.

[6]  *See supra* nn.3-5.

13

based on the historical record and have agreed that age-based restrictions are consistent with our Nation's tradition of firearms regulation. Given the nature of the analysis conducted in those decisions, they remain sound under *Bruen*'s historical framework. *See Bruen*, 142 S. Ct. at 2127-28 (characterizing pre-*Bruen* historical analyses as "broadly consistent with *Heller*").

For instance, the Fifth Circuit upheld a federal statute that restricted the sale of firearms to individuals under the age of 21, relying in substantial part on the historical record to do so. *See Nat'l Rifle Ass'n of Am., Inc. v. ATF ("NRA I")*, 700 F.3d 185 (5th Cir. 2012). In *NRA I*, the Court undertook a lengthy analysis of the Nation's historical traditions regarding gun ownership and possession by people under the age of 21. *Id.* at 199–204. It explained that, at the Founding, it was understood that jurisdictions could "disarm[] select groups for the sake of public safety," an approach, the Court observed, that was consistent with the "classical republican notion that only those with adequate civic 'virtue' could claim the right to arms." *Id.* at 200-01. Given that the common-law age of majority was 21, the Court explained, the Founders would likely have "supported restricting an 18-to-20-year-old's right to

14

keep and bear arms." *Id.* at 202.  And in the nineteenth century, the Court added, a large range of States enacted restrictions on the use or purchase of firearms by those under the age of 21.  *Id.* at 202-03.  In short, the Court concluded, there is "considerable evidence" of a "longstanding, historical tradition" of restricting the purchase or use of firearms by those under the age of 21.  *Id.* at 203.

Other courts have agreed with *NRA I*'s assessment of history.  In *Powell v. Tompkins*, 926 F. Supp. 2d 367 (D. Mass. 2013), *aff'd*, 783 F.3d 332 (1st Cir. 2015), for instance, the court conducted a lengthy historical analysis prior to upholding Massachusetts's statute, which "set[ ] the minimum age for obtaining a license to carry a firearm at twenty-one," against a Second Amendment challenge.  *Id.* at 370, 385-89.  Similar statutes in Florida, Illinois, and Pennsylvania have also been upheld on historical grounds, with courts concluding that States may permissibly regulate the possession and use of firearms by people under the age of 21 consistent with our Nation's historical tradition. *See, e.g.*, *National Rifle Ass'n v. Swearingen*, 545 F. Supp. 3d 1247 (N.D. Fla. 2021), *aff'd sub nom. Nat'l Rifle Ass'n v. Bondi*, 61 F.4th 1317, *reh'g en banc granted*, 72 F.4th 1346 (11th Cir. 2023); *Lara v. Evanchick*, 534

F. Supp. 3d 478, 491-92 (W.D. Pa. 2021), *appeal docketed*, No. 21-1832

(3d Cir.); *People v. Mosley*, 2015 IL 115872, ¶¶ 35-37.[7]

In short, Colorado's decision to enact a statute prohibiting the sale

of firearms to young people is consistent with other States' approaches

in this area, which have been upheld as constitutional in light of our

Nation's historical tradition.

## III. The District Court Erred In Finding The Challenged Statute Unconstitutional.

The district court reached a conclusion contrary to those reached

by the courts described above, Order at 43, but the grounds it offers do

not withstand scrutiny. As Colorado explains, the conduct regulated by

the challenged statute does not fall within the text of the Second

Amendment because it concerns only the sale of firearms to individuals

under the age of 21, who were considered minors, and thus likely not

part of "the People" protected by the Second Amendment. Colo. Br. 31-

34. But even if people under the age of 21 were considered part of "the

---

[7] The two court of appeals opinions to reach contrary conclusions were subsequently vacated. *See Jones v. Bonta*, 34 F.4th 704, *vacated on reh'g*, 47 F.4th 1124 (9th Cir. 2022) (vacated and remanded for further proceedings); *Hirschfeld v. ATF*, 5 F.4th 407, *vacated*, 14 F.4th 322 (4th Cir. 2021) (vacated as moot when plaintiffs aged out of the challenged restrictions).

People," the challenged law is consistent with our Nation's historical tradition, because the States have for centuries imposed firearms restrictions on individuals under the age of 21.  Colo. Br. 34-37.  Amici States agree with Colorado that for these reasons and others, its restrictions on the sale of firearms to people under the age of 21 do not violate the Second Amendment.  Amici States write separately to emphasize the following points.

First, the district court erred by requiring Colorado to shoulder a burden that *Bruen* assigns to plaintiffs.  As discussed, *supra* p. 8, a State need not assume the burden of demonstrating that a law is historically justified unless the plaintiff first shows that the conduct the law burdens falls within the Second Amendment's text.  *See Bruen*, 142 S. Ct. at 2129-30.  Although the district court purported to acknowledge that rule, Order at 20, it failed to hold plaintiffs to their burden as a practical matter, instead "begin[ning] with the assumption that every American is included" in the phrase "the People," *id*. at 25, and then asking whether Colorado had rebutted that assumption by showing "'a historical tradition of firearm regulation,'" *id*. (quoting *Bruen*, 142 S. Ct. at 2130).  But that reasoning confuses *Bruen*'s second step with its first,

17

effectively forcing the State to shoulder the burden of demonstrating a relevant historical tradition in all cases.  That was error.

Second, the district court erred in discounting the relevance of historical sources from the nineteenth century.  Order at 36-40.  As Colorado explains, the historical record shows that, in the years immediately preceding and following the Civil War, at least 19 States and the District of Columbia enacted statutes broadly similar to the statute challenged here—i.e., generally prohibiting people under the age of 21 from purchasing firearms or carrying them in some manner in public.  Colo. Br. 47.  The district court rejected the salience of these historical sources on several grounds, Order at 36-40, but none is persuasive.

For one, the district court erred in dismissing Reconstruction Era sources as "postenactment history" that is entitled to lesser weight.  Order at 40.  The Supreme Court considered nineteenth-century historical evidence in both *Heller* and *Bruen*, describing Reconstruction Era perspectives on the scope of the Second Amendment as "instructive" in *Heller*, 554 U.S. at 615, and examining at length both antebellum and postbellum sources in *Bruen*, 142 S. Ct. at 2145-53.  Although the

*Bruen* Court observed the existence of "an ongoing scholarly debate on whether courts should primarily rely on" historical accounts from 1791, when the Second Amendment was ratified, or 1868, when the Fourteenth Amendment was ratified, *id.* at 2138; *accord id.* at 2162-63 (Barrett, J., concurring), it did not, as the district court implicitly suggested, Order at 37, resolve that question in favor of Founding Era sources. To the contrary, the Court expressly stated it was "not address[ing]" (and thus not resolving) that dispute, because New York's good-cause regime was not supported by historical accounts from either period. *Bruen*, 142 S. Ct. at 2138.

The district court's view that the 1800s-era sources presented by Colorado were insufficient to shoulder its burden for other reasons, *see* Order at 38-39, is likewise incorrect. The historical evidence introduced by Colorado establishes that, in the late 1800s, almost half of the States in the Union imposed significant restrictions on young people under the age of 21, prohibiting them from purchasing certain firearms, carrying those firearms in public in some manner, or both. Colo. Br. 48. But the district court dismissed the majority of these sources without meaningful analysis, Order at 39-40, simply summarizing the parties'

arguments regarding them and concluding that they should be "give[n] little weight," *id.* at 40.  And although the district court conceded that several state statutes from the Civil War era were analogous to Colorado's, it dismissed them because it could not find "confirmation in the form of founding era regulations."  Order at 38.  But *Bruen* does not hold, or even suggest, that a Reconstruction Era regulation is only persuasive insofar as it is identical to a founding-era regulation.  The district court erred in adopting a contrary view.

## CONCLUSION

For these reasons, the Court should reverse the judgment below.

Respectfully submitted,

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

/s/ Alex Hemmer
ALEX HEMMER
Deputy Solicitor General
JOHN R. MILLIGAN
Assistant Attorney General
100 West Randolph Street
Chicago, Illinois 60601
(312) 814-5526
alex.hemmer@ilag.gov

KRIS MAYES
*Attorney General*
*State of Arizona*
2005 N. Central Avenue
Phoenix, AZ 85004

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

BRIAN L. SCHWALB
*Attorney General*
*District of Columbia*
400 6th Street NW, Suite 8100
Washington, DC 20001

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

AARON D. FORD
*Attorney General*
*State of Nevada*
100 North Carson Street
Carson City, NV 89701

ROB BONTA
*Attorney General*
*State of California*
1300 I Street
Sacramento, CA 95814

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

ANNE E. LOPEZ
*Attorney General*
*State of Hawai'i*
425 Queen Street
Honolulu, HI 96813

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 MLK Jr, Blvd.
St. Paul, MN 55155

MATTHEW J. PLATKIN
*Attorney General*
*State of New Jersey*
25 Market Street
Trenton, NJ 08625

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

MICHELLE A. HENRY
*Attorney General*
*Commonwealth of Pennsylvania*
Strawberry Square, 16th Floor
Harrisburg, PA 17120

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

December 14, 2023

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) because it contains 4,038 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).  This brief complies with the typeface requirement of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word.

/s/ Alex Hemmer
ALEX HEMMER

December 14, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2023, I electronically filed the foregoing Brief of Amici Curiae Illinois et al. with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit using the CM/ECF system.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


/s/ Alex Hemmer
ALEX HEMMER