No. 23-1251

# In the
# United States Court of Appeals
# For the Tenth Circuit

**JARED POLIS, in his official capacity as Governor of the State of Colorado,**

*Defendant-Appellant,*

v.

**ROCKY MOUNTAIN GUN OWNERS, TATE MOSGROVE,
and ADRIAN S. PINEDA,**

*Plaintiffs-Appellees.*

On Appeal from the United States District Court
District of Colorado
The Honorable Phillip A. Brimmer
Chief District Judge
Case No. 23-cv-01077-PAB-NRN

**AMICUS BRIEF OF
THE NATIONAL SHOOTING SPORTS FOUNDATION, INC.
IN SUPPORT OF PLAINTIFF-APPELLEES AND
AFFIRMANCE OF THE DISTRICT COURT'S**

Michael L. Rice
Harrison Law LLC
141 W. Jackson Blvd., Suite 2055
Chicago, IL 60604
Telephone: (213) 638-8781
mikerice@hlawllc.com

*Counsel for Amicus
National Shooting Sports Foundation, Inc.*

# TABLE OF CONTENTS

STATEMENT OF INTEREST OF AMICUS CURIAE ........................................1

Facts Necessary to Argument of the Issues ..........................................................2

SUMMARY OF ARGUMENT .............................................................................3

ARGUMENT ........................................................................................................4

    I.     THE SECOND AMENDMENT RIGHT OF LAW-ABIDING CITIZENS TO KEEP AND BEAR ARMS FOR SELF-DEFENSE INCLUDES THE RIGHT TO ACQUIRE THOSE ARMS...............5

    II.    YOUNG ADULTS AGED 18 TO 20 ARE WITHIN THE PROTECTION OF THE SECOND AMENDMENT. .......................11

    III.   THE BAN'S PROHIBITION ON THE PURCHASE OF FIREARMS BY LAW-ABIDING YOUNG ADULTS CANNOT BE JUSTIFIED. ...............................................................14

Conclusion ..........................................................................................................19

Certificate of Compliance ...................................................................................20

Certificate of Service ..........................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Brown v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
No. 1:22-CV-80, 2023 WL 8361745 (N.D. W. Va. Dec. 1, 2023),
*app. filed*, No. 23-2275 (4th Cir. Dec. 11, 2023).....................................7

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ............................. 5, 9, 13, 14

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ............................6

*Firearms Policy Coalition, Inc. v. McCraw*, 623 F. Supp. 3d 740 (N.D. Tex.),
*app. dism'd*, No. 22-10898, 2022 WL 19730492 (5th Cir. Dec. 21, 2022) .........14

*Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
___ F. Supp. 3d ___, No. 3:22-CV-410, 2023 WL 3355339
(E.D. Va. May 10, 2023), *app. filed from subsequent judgment*,
No. 23-2085 (4th Cir. Oct. 17, 2023) ........................... 7, 14, 16, 17, 18

*Griswold v. Connecticut*, 381 U.S. 479 (1965)..........................................7

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*,
5 F.4th 407 (4th Cir.), *vacated as moot on other grounds*,
14 F.4th 322 (4th Cir. 2021) ...............................................................10

*Ill. Ass'n of Firearms Retailers v. City of Chicago*,
961 F. Supp. 2d 928 (N.D. Ill. 2014).....................................................8

*Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953 (9th Cir. 2014)................6

*Lara v. Comm'r Pa. State Police*, 91 F.4th 122 (3d Cir. 2024)...... 12, 15, 16, 17, 18

*Luis v. United States*, 578 U.S. 5 (2016)...................................................8

*Malloy v. Hogan*, 378 U.S. 1 (1964).......................................................15

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ..........................5, 15

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) ...................................15

*National Rifle Association v. Bondi*, 61 F.4th 1317 (11th Cir.),
*reh'g en banc granted, op. vacated*, 72 F.4th 1346 (11th Cir. 2023)...................16

*New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) .................. passim

*Renna v. Bonta*, 667 F. Supp. 3d 1048 (S.D. Cal.),
   *app. filed*, No. 23-55327 (9th Cir. Apr. 20, 2023) .............................................9, 10

*Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) .................................7

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) ....................................10

*Vincent v. Garland*, 80 F.4th 1197 (10th Cir.), *pet. for cert. filed*,
   No. 23-683 (Dec. 26, 2023) ................................................. 5, 10, 11, 14

*Worth v. Harrington*, 666 F. Supp. 3d 902 (D. Minn.),
   *app. filed*, No. 23-2248 (8th Cir. 2023) .................................................. 13, 16, 17

## **Constitutional Provisions**

U.S. Const. amend. II ...............................................................................................5

U.S. Const. amend. XXVI ......................................................................................13

U.S. Const. art. I, § 2 .............................................................................................13

U.S. Const. art. I, § 3 .............................................................................................13

U.S. Const. art. II, § 1 ............................................................................................13

## **Statutes**

18 U.S.C. § 922(t) ....................................................................................................8

27 C.F.R. § 478.124 ..................................................................................................8

Second Militia Act of 1792, ch. 33, §1, 1 Stat. 271 (1792) .............................. 12, 17

C.R.S. § 18-12-112(2)(f) ...........................................................................................2

C.R.S. § 18-12-112(9)(a) ..........................................................................................2

C.R.S. § 18-12-112.5(1)(a.3) .....................................................................................2

C.R.S. § 18-12-112.5(1)(a.5) .....................................................................................2

C.R.S. § 18-12-112.5(1)(b) ........................................................................................3

C.R.S. § 18-12-112.5(1)(c) ........................................................................................3

S.B. 169, 74th General Assembly, 1st Reg. Sess. (Colo. 2023) ...................... passim

**STATEMENT OF INTEREST OF AMICUS CURIAE[1]**

*Amicus curiae*, the National Shooting Sports Foundation, Inc. ("NSSF"), is the trade association for the firearms, ammunition, hunting, and shooting sports industry. Formed in 1961, NSSF is a Connecticut non-profit tax-exempt corporation serving its member firearms manufacturers, distributors, and retailers; sportsmen's organizations; public and private shooting ranges; gun clubs; and endemic media publishers. NSSF's mission is to promote, protect and preserve hunting and shooting sports. NSSF provides trusted leadership in addressing industry challenges; advances participation in and understanding of hunting and the shooting sports; reaffirms and strengthens its members' commitment to the safe and responsible use of their products; and promotes a political environment that is supportive of America's traditional hunting and shooting sports heritage and firearms freedoms. NSSF believes that lawful commerce in firearms and firearms-related products is and must be protected to preserve the constitutional right guaranteed by the Second Amendment to purchase, own, possess and use firearms.

NSSF's interest in this action derives principally from the fact that its firearms manufacturer, distributor, and retailer members, including those affected

---

[1] Pursuant to Fed. R. App. P. 29(a)(2), Defendant-Appellant and Plaintiffs-Appellees have both consented to the filing of an *amicus* brief by NSSF. And pursuant to Fed. R. App. P. 29(a)(4)(E), *amicus* affirms that no counsel for a party wrote this brief in whole or in part, and no party, party's counsel or any person other than *amicus* made a monetary contribution intended to fund the brief's preparation or submission.

by SB23-169, provide for the lawful commerce in firearms that makes the exercise of Second Amendment rights possible. Plaintiffs-Appellees have ably demonstrated in their principal brief that the District Court's preliminary injunction is fully consistent with the analytical framework established by the United States Supreme Court. NSSF submits this brief to emphasize the importance of the right to acquire firearms to a full realization of the fundamental rights protected by the Second Amendment, an issue of particular importance to its members. NSSF also addresses the inclusion of 18-to-20-year-olds within the protection of the Second Amendment, and the lack of historical precedent justifying a complete prohibition on 18-to-20-year-olds acquiring firearms.

### Facts Necessary to Argument of the Issues

In 2023, Colorado enacted S.B. 169, 74th General Assembly, 1st Reg. Sess. (Colo. 2023) ("SB23-169"), amending the State's criminal code regarding firearm commerce. Following the effectiveness of SB23-169, it became "unlawful for a person less than twenty-one years of age to purchase a firearm." C.R.S. § 18-12-112(2)(f); C.R.S. § 18-12-112.5(1)(a.5). SB23-169 also amended the code to provide that "[a] person who is a licensed gun dealer shall not make or facilitate the sale of a firearm to a person who is less than twenty-one years of age." C.R.S. § 18-12-112.5(1)(a.3). A person aged 18 to 20 who purchases a firearm commits a class 2 misdemeanor. C.R.S. § 18-12-112(9)(a);

C.R.S. § 18-12-112.5(1)(c). A licensed gun dealer who sells a firearm to a person aged 18 to 20 commits a class 1 misdemeanor. C.R.S. § 18-12-112.5(1)(b). While the prohibition created by SB23-169 has limited exceptions, it operates to preclude law-abiding, responsible young adults from purchasing any firearm. Order (Appellants' Br. Ex. A), 14, 26.

## SUMMARY OF ARGUMENT

First, the Supreme Court has clearly recognized that the Second Amendment preserves the right of the people to keep and bear arms. In connection with that right, multiple courts have recognized that the Second Amendment's protections must extend to the lawful purchase of covered products if the right to possess firearms is to be realized. These findings are consistent with the Supreme Court's long-standing recognition that constitutional protections extend to rights or acts necessary to the full enjoyment of a right expressly set forth in the Constitution. Consequently, the State's argument that prohibitions regarding the purchase or sale of firearms fall outside the scope of the Second Amendment must be rejected.

Second, the district court correctly determined that 18-to-20-year-olds are encompassed by "the people" to whom the Second Amendment extends the right to keep and bear arms. The Supreme Court's decisions regarding the Second Amendment have broadly described the Amendment's reach to all members of the political community. And the fact that 18-to-20-year-olds were not only permitted

to bear arms, but were in fact required to do so as part of the Second Militia Act, forcefully demonstrates that the people in the Founding Era would have understood that those young adults enjoyed the protections of the Second Amendment.

Third, because Colorado's restrictions on the sale of firearms to law-abiding adults aged 18 to 20 are encompassed by the Second Amendment, those restrictions fail in the absence of a demonstration by the State of analogous regulations at the time of the ratification of the Second Amendment. No such Founding Era restrictions on 18-to-20-year-olds existed. Moreover, it is indisputable that in 1791, young adults – who were required to serve in the militia and provide their own firearms – had a recognized right to acquire the needed firearms. The broad prohibition on sales enacted by Colorado is not permitted by the Second Amendment.

Against this backdrop, NSSF believes that Plaintiff-Appellees have demonstrated that the preliminary injunction entered by the district court must be affirmed.

## ARGUMENT

SB23-169, which prohibits law-abiding, responsible young adults (18-to-20-year-olds) in Colorado from purchasing any firearm, unreasonably infringes upon the Second Amendment rights of those individuals, guaranteed to them through the Fourteenth Amendment. In evaluating the constitutionality of laws implicated by

the Second Amendment, the Supreme Court has established a two-part analytical approach.  First, a court must evaluate whether the Second Amendment's plain text covers the conduct at issue.  *Vincent v. Garland*, 80 F.4th 1197, 1200 (10th Cir.), *pet. for cert. filed*, No. 23-683 (Dec. 26, 2023) (citing *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022)).  Second, where the Second Amendment is applicable, the question becomes whether the government can justify the restriction by showing that it is consistent with the nation's historical tradition of firearm regulation.  *Vincent*, 80 F.4th 1200.  SB23-169 cannot withstand this scrutiny.

## I. THE SECOND AMENDMENT RIGHT OF LAW-ABIDING CITIZENS TO KEEP AND BEAR ARMS FOR SELF-DEFENSE INCLUDES THE RIGHT TO ACQUIRE THOSE ARMS.

The Second Amendment to the United States Constitution preserves "the right of the people to keep and bear Arms" and declares that this right "shall not be infringed."  U.S. Const. amend. II.  In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court determined that a ban on the possession of handguns runs afoul of this constitutional provision.  554 U.S. at 628.  And in extending the Second Amendment's protection to the states under the Fourteenth Amendment, the Court found it "clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty."  *McDonald v. City of Chicago*,

561 U.S. 742, 778 (2010).

"Both *Heller* and *McDonald* suggest that broadly prohibitory laws restricting the core Second Amendment right—like the handgun bans at issue in those cases, which prohibited handgun possession even in the home—are categorically unconstitutional." *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011). Of particular importance to NSSF's constituents – in particular the licensed retailers in Colorado whose business is the lawful commerce in firearms and ammunition – is the basic principle that the constitutionally protected right to possess a firearm is meaningless absent the right to purchase or otherwise acquire the firearm. The Seventh Circuit recognized a similar link with respect to range training, holding that "[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." *Id*. at 704.

Indeed, courts have regularly recognized the critical role of the licensed firearms dealers represented by NSSF in the realization of the rights protected by the Second Amendment. For example, the Ninth Circuit found that the right to possess firearms for protection includes the right "to obtain the bullets necessary to use them." *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014). And the Ninth Circuit subsequently recognized a right to acquire firearms as a necessary corollary to the realization of the rights guaranteed by the Second

Amendment in *Teixeira v. County of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017), although it found that the plaintiff there "failed to state a claim that the ordinance impedes Alameda County residents from acquiring firearms." *Id*. at 678.

Multiple other courts have reached the same conclusion that the Second Amendment protects the right to acquire firearms. *See*, *e.g.*, *Brown v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 1:22-CV-80, 2023 WL 8361745, at *10 (N.D. W. Va. Dec. 1, 2023) ("the act of purchasing a handgun is within the bounds of the Second Amendment"), *app. filed*, No. 23-2275 (4th Cir. Dec. 11, 2023). And as the federal district court in Virginia recognized in analyzing the federal law prohibiting 18-to-20-year-olds from purchasing firearms, "given its ordinary, commonsense, and logical meaning the right to 'keep arms' (the right to 'have') of necessity includes the right, *inter alia*, to purchase arms. That then puts an end to the textual inquiry with the conclusion that the conduct at issue is protected by the plain text of the Second Amendment." *Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, ___ F. Supp. 3d ___, No. 3:22-CV-410, 2023 WL 3355339, at *7 (E.D. Va. May 10, 2023), *app. filed from subsequent judgment*, No. 23-2085 (4th Cir. Oct. 17, 2023); *see also Griswold v. Connecticut*, 381 U.S. 479, 482–483 (1965) ("[R]ight of freedom of speech and press includes not only the right to utter or to print, but the right to distribute, the right to receive, the right to read…. Without those peripheral rights the specific rights would be less

secure."); *Luis v. United States*, 578 U.S. 5, 26 (2016) ("Constitutional rights thus implicitly protect those closely related acts necessary to their exercise.") (Thomas, J., concurring).

Here, of course, SB23-169 operates as an impermissible intrusion on the right to acquire firearms by law-abiding young adults, and consequently, on the right protected by the Second Amendment to keep and bear arms.[2] *See also Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 938 (N.D. Ill. 2014) (ban on sales of firearms within Chicago interfered with what the court characterized as "the *most fundamental* prerequisite of legal gun ownership—that of simple acquisition.") (emphasis in original). Thus, the State's argument that SB23-169 leaves those under 21 free to possess and use firearms is unavailing. The prohibition on acquiring firearms itself intrudes improperly on young adults' constitutional rights. Just as we would not require that such young adults' exercise of free speech depend on obtaining permission from adults over the age of 21, their exercise of their rights under the Second Amendment cannot be left to the discretion of others to provide them with the firearms they are otherwise permitted to possess.

Although the State attempts to argue that its prohibition on sales of firearms

---

[2] Young adults who seek to acquire firearms from federally licensed dealers could only do so in compliance with the law, which includes background checks before a firearm can be purchased, unless a valid exception applies, *e.g.*, a state permit to purchase firearms. *See* 18 U.S.C. § 922(t); 27 C.F.R. § 478.124.

to law-abiding adults is only the regulation of firearms commerce and not a prohibition that runs afoul of the Second Amendment (State Br., 38-41), that argument is inherently inconsistent with the Supreme Court's established constitutional analysis. While the Supreme Court in *Heller* referenced "presumptively lawful" conditions imposed on the commercial sale of firearms, *Heller*, 554 U.S. at 626-27 & n.26, it was not addressing any such conditions. And when the Court in *Bruen* subsequently articulated the test for determining constitutionality of firearm laws under the Second Amendment, its authoritative statement of the required analytical approach did not create any exception or analytical step that exempted "presumptively lawful" restrictions on firearms commerce.

Other courts have recognized that reading the Supreme Court's language as allowing a prohibition on access to firearms protected by the Second Amendment goes too far. The court in *Renna v. Bonta* determined that California's Unsafe Handgun Act, which limits handgun sales to those on a state-approved roster of "safe" handguns, violated the Second Amendment because it restricted access to handguns commonly in use. *Renna v. Bonta*, 667 F. Supp. 3d 1048, 1065-66 (S.D. Cal. 2023), *app. filed*, No. 23-55327 (9th Cir. Apr. 20, 2023). The court rejected defendants' argument that, because some handguns were available for purchase, the California law was a permissible condition on the commercial sale of firearms,

finding instead that the law operated as a "functional prohibition" on "the commercial sale of a large subset of handguns in common use." *Id.*; *see also United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010) (recognizing that "[i]f there were somehow a categorical exception for [commercial sales] restrictions, it would follow that there would be no constitutional defect in prohibiting the commercial sale of firearms. Such a result would be untenable under *Heller*.").

Relying on the analysis of the Fourth Circuit in *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407 (4th Cir.), *vacated as moot on other grounds*, 14 F.4th 322 (4th Cir. 2021), the court in *Renna* recognized the distinction between laws that served as "a hoop someone must jump through to *sell* a gun, such as obtaining a license, establishing a lawful premise, or maintaining transfer records," and laws "operat[ing] as a total ban on *buying* a gun from a licensed dealer that has met the required [licensing] conditions and qualifications to sell arms." *Renna*, 667 F. Supp. 3d at 1064 (emphasis in original) (quoting *Hirschfeld*, 5 F.4th at 416). The court reasoned that "[i]f the commercial sales limitation identified in *Heller* were interpreted as broadly as the State suggests, the exception would swallow the Second Amendment." *Renna*, 667 F. Supp. 3d at 1065.

As explained more fully by Plaintiffs-Appellees, *Vincent v. Garland* does

not support the State's position. *Vincent* addressed the continued constitutionality of prohibitions on possession of firearms by non-violent felons.[3] The court reasoned that the *Bruen* decision struck down licensing requirements that imposed a showing of "special need" to carry a firearm, while at the same time accepting the validity of "shall issue" licensing regimes that require background checks "to ensure that the applicant is a 'law-abiding, responsible citizen[ ].'" *Vincent*, 80 F.4th at 1201-02 (quoting *Bruen*, 142 S. Ct. at 2138 n.9). But the identification of citizens who are by definition *not* law-abiding citizens and precluding them from possessing firearms is hardly comparable to SB23-169's complete ban on a sector of law-abiding adults from acquiring and possessing firearms. The former may be constitutional, but the latter blanket exclusion based solely on persons being 18-to-20-year-olds as created by SB23-169 is not.

In this case, the right to acquire firearms is a necessary and protected corollary to the Second Amendment's right to keep and bear arms, and SB23-169's wholesale prohibition on young adults' exercise of that right cannot be justified.

## II.   YOUNG ADULTS AGED 18 TO 20 ARE WITHIN THE PROTECTION OF THE SECOND AMENDMENT.

The State argues that "18-to-20-year-olds were not part of 'the people' under the Second Amendment." (State Br., 31.) This argument was very recently

---

[3] The Supreme Court may resolve the split of authority on this issue when it decides *United States v. Rahimi*, 61 F.4th 443 (5th Cir.), *cert. granted* (2023).

considered and rejected by the Third Circuit in *Lara v. Commissioner Pennsylvania State Police*, 91 F.4th 122 (3d Cir. 2024). As that court recognized:

> Although the government is tasked with identifying a historical analogue at the second step of the *Bruen* analysis, we are not limited to looking through that same retrospective lens at the first step. If, at step one, we were rigidly limited by eighteenth century conceptual boundaries, "the people" would consist of white, landed men, and that is obviously not the state of the law.

*Id.* at 131. In addition, the court concluded that "wholesale exclusion of 18-to-20-year-olds from the scope of the Second Amendment would impermissibly render 'the constitutional right to bear arms in public for self-defense ... a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Id.* at 132 (quoting *Bruen*, 142 S. Ct. at 2156 (cleaned up)). As a result, the Third Circuit held "that 18-to-20-year-olds are, like other subsets of the American public, presumptively among 'the people' to whom Second Amendment rights extend." *Lara*, 91 F.4th at 132.

It should be beyond debate that at the time the Bill of Rights was ratified, their protections extended to citizens 18 to 20 years old. In fact, the federal Militia Act enacted in 1792 stated that each male citizen *"who is or shall be of the age of eighteen years* … shall severally and respectively be enrolled in the militia" and shall "provide himself" with a firearm and ammunition. Second Militia Act of 1792, ch. 33, §1, 1 Stat. 271, 271 (1792) (emphasis added). And as the Supreme Court has noted, those in the militia were plainly within "the people" that were

afforded Second Amendment protection. *Heller*, 554 U.S. at 580. Those 18-year-olds who were required to perform militia service and supply their own weapons had to acquire those firearms. That was the understanding of the Second Amendment in the Founding Era.

More generally, the Court in *Heller* plainly read the Second Amendment's reference to "the right of the people" within the broader context of the other references to "the people" in the Constitution, finding that "the term unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580. Its use of the phrase in the context of similar references in the Constitution created a "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Id*. at 580-81. Based in part on *Heller*'s discussion of the reach of the Second Amendment rights, as well as the absence of age restrictions in other provisions in the Bill of Rights compared to other provisions in the Constitution,[4] references to "the people" elsewhere in the Bill of Rights, and Founding Era militia laws, the court in *Worth v. Harrington* concluded that "the text of the Second Amendment includes within the right to keep and bear arms 18-to-20-year-olds …." 666 F. Supp. 3d 902, 916 (D. Minn.), *app. filed*, No. 23-2248 (8th Cir. 2023); *see also*

---

[4] Indeed, the Constitution includes age restrictions not found in the Bill of Rights. *See* U.S. Const. art. I, § 2 (age 25 for the House); U.S. Const. art. I, § 3 (age 30 for the Senate); U.S. Const. art. II, § 1 (age 35 for the President); *cf.* U.S. Const. amend. XXVI (setting voting age at 18).

*Firearms Policy Coalition, Inc. v. McCraw*, 623 F. Supp. 3d 740, 748 (N.D. Tex.) ("[A]re law-abiding 18-to-20-year-olds properly considered members of the political community and a part of the national community? The answer is yes. And based on that answer, the Court concludes that law-abiding 18-to-20-year-olds are a part of 'the people' referenced in the Second Amendment."), *app. dism'd*, No. 22-10898, 2022 WL 19730492 (5th Cir. Dec. 21, 2022); *Fraser*, ___ F. Supp. 3d ___, 2023 WL 3355339, at *14 ("Like these other rights [in the First, Fourth, Fifth, Eight, and Fourteenth Amendments], the Second Amendment's protections apply to 18-to-20-year-olds.").

Thus, the district court in this case correctly concluded that 18-to-20-year-olds are entitled to the protections of the Second Amendment.

## III.   THE BAN'S PROHIBITION ON THE PURCHASE OF FIREARMS BY LAW-ABIDING YOUNG ADULTS CANNOT BE JUSTIFIED.

Because the right of 18-to-20-year-olds to purchase firearms comes within the reach of the Second Amendment, the State was required to demonstrate that SB23-169's ban on those rights is justified by analogous historical regulations. *Vincent*, 80 F.4th at 1200.  The State cannot do so.

First, the Supreme Court's decision in *Bruen* re-affirmed that "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them."  *Bruen*, 142 S. Ct. at 2136 (quoting *Heller*, 554 U.S. at 634–635). For purposes of the Second Amendment, this means that the district court was

required to examine the understanding of the Second Amendment at the time of the Founding. *See Moore v. Madigan*, 702 F.3d 933, 935 (7th Cir. 2012) (in case challenging state law, "1791, the year the Second Amendment was ratified" was "the critical year for determining the amendment's historical meaning"). Indeed, *Bruen* made clear that "individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government." *Bruen*, 142 S. Ct. at 2137; *see also McDonald*, 561 U.S. at 765 (recognizing that enforcement under the Fourteenth Amendment must be "according to the same standards that protect those personal rights against federal encroachment" (quoting *Malloy v. Hogan*, 378 U.S. 1, 10 (1964)).

*Bruen* recognized that "post-Civil war discussion of the right to bear arms, [which] 'took place 75 years after the ratification of the Second Amendment, … do[es] not provide as much insight into its original meaning as earlier sources." *Bruen*, 142 S. Ct. at 2137-38. In reviewing the issue of what period of analogous laws is relevant to restrictions on 18-to-20-year-olds, the Third Circuit followed this approach. It first recognized that the Supreme Court has regularly construed other aspects of the Bill of Rights according to their understanding at the time of the Founding, and not the adoption of the Fourteenth Amendment. *Lara*, 91 F.4th at 134. Indeed, *Bruen* referred to this history of constitutional construction as

reflecting a general assumption. *Bruen*, 142 S. Ct. at 2137 ("And we have generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791."). After cataloguing the Supreme Court's history of interpreting guarantees in the Bill of Rights according to their public meaning at the founding, *Lara*, 91 F.4th at 133-34, the Third Circuit found that "to maintain consistency in our interpretation of constitutional provisions, we hold that the Second Amendment should be understood according to its public meaning in 1791." *Id*. at 134.[5]

Other courts who have looked at prohibitions on 18-to-20-year-olds' possession or purchase of firearms have concluded the same. *See*, *e.g.*, *Fraser*, ___ F. Supp. 3d ___, 2023 WL 3355339, at *15 ("The Court must most heavily credit the historical sources from around the time of the ratification of the Second Amendment (1791)."); *Worth*, 666 F. Supp. 3d at 919 ("[I]n this Court's view, *Bondi* declined to follow rather clear signs that the Supreme Court favors 1791 as the date for determining the historical snapshot of 'the people' whose understanding of the Second Amendment matters."). As the court in *Worth* also

---

[5] In so finding, the Third Circuit recognized its disagreement with the panel decision in *National Rifle Association v. Bondi*, 61 F.4th 1317 (11th Cir. 2023). *See Lara*, 91 F.4th at 134 n.14. But as the Third Circuit also noted, rehearing en banc has been granted in *Bondi*, which vacated the panel decision. *See* 72 F.4th 1346 (11th Cir. 2023).

recognized, "*Bondi*'s conclusion [that the understanding at the time the Fourteenth Amendment was adopted is controlling] is difficult to square with the Supreme Court's emphasis on applying the Bill of Rights against the states and federal government according to the same standards." *Id*. at 920 (citing *Bruen*, 142 S. Ct. at 2137).

Second, when properly analyzed under the view of the Second Amendment in the Founding Era, it is apparent that SB23-169 is irreconcilable with the Constitution. As noted above, in the Founding Era, not only was there an absence of laws prohibiting 18-to-20-year-olds from possessing or purchasing firearms, but the Militia Acts of the time *required* such young adults to be armed. *See* Second Militia Act of 1792, ch. 33, § 1, 1 Stat. 271 (1792) (requiring all able-bodied men to enroll in the militia and to arm themselves upon turning 18). As the Third Circuit recognized, "the Second Militia Act is good circumstantial evidence of the public understanding at the Second Amendment's ratification as to whether 18-to-20-year-olds could be armed, especially considering that the Commissioner cannot point us to a single founding-era statute imposing restrictions on the freedom of 18-to-20-year-olds to carry guns." *Lara*, 91 F.4th at 137; *see also Fraser*, ___ F. Supp. 4th ___, 2023 WL 3355339, at *19 ("The Government has not presented any evidence of age-based restrictions on the purchase or sale of firearms from the colonial era, Founding, or Early Republic. [citations omitted] Nor has the

Government offered evidence of such regulation between then and 1791 or in relevant proximity thereafter.").

As the court in *Fraser* concluded, "the lack of analogous evidence of Founding-era regulations … permits a finding that the Founders considered age-based regulations on the purchase of firearms to circumscribe the right to keep and bear arms confirmed by the Second Amendment." *Fraser*, ___ F. Supp. 4th ___, 2023 WL 3355339, at *20. The Third Circuit reached the same conclusion:

> We understand that a reasonable debate can be had over allowing young adults to be armed, but the issue before us is a narrow one. Our question is whether the [State] has borne his burden of proving that evidence of founding-era regulations supports Pennsylvania's restriction on 18-to-20-year-olds' Second Amendment rights, and the answer to that is no.

*Lara*, 91 F.4th at 137.

Likewise here, the district court correctly held that SB23-169 improperly infringes on the Second Amendment rights of 18-to-20-year-olds in Colorado and is, therefore, unconstitutional. This conclusion was undoubtedly correct, and NSSF urges affirmance of the district court's preliminary injunction.

**Conclusion**

For the foregoing reasons, *Amicus* NSSF joins Plaintiffs-Appellees in urging affirmance of the district court.

Dated: February 14, 2024          Respectfully submitted,

 *[s] Michael L. Rice*
Michael L. Rice
Harrison Law LLC
141 W. Jackson Blvd.
Suite 2055
Chicago, IL 60604
Telephone: (312) 638-8781
Fax: (312) 638-8793
mikerice@hlawllc.com

*Counsel for Amicus*
*National Shooting Sports Foundation, Inc.*

## Certificate of Compliance

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel certifies that this Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 4339 words, exempting those portions excludes by Rule 32(f). The undersigned counsel also certifies that this Brief complies with the typeface and type-style requirements of Tenth Circuit Rule 32 and Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Dated: February 14, 2024

Respectfully submitted,

*[s] Michael L. Rice*
Michael L. Rice
*Counsel for Amicus*

**Certificate of Service**

I hereby certify that on February 14, 2024, I filed the foregoing with the Clerk of the Court via CM/ECF, which will electronically serve all counsel of record. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: February 14, 2024                    Respectfully submitted,

                                             *[s] Michael L. Rice*
                                             Michael L. Rice
                                             *Counsel for Amicus*