No. 23-1251

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

JARED POLIS, in his official capacity as Governor of the State of Colorado,

*Defendant-Appellant*,

v.

ROCKY MOUNTAIN GUN OWNERS, TATE MOSGROVE, and ADRIAN S. PINEDA,

*Plaintiffs-Appellees*,

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO; CASE NO. 23-CV-01077-PAB-NRN
THE HONORABLE PHILLIP A. BRIMMER, CHIEF JUDGE, PRESIDING

## SUPPLEMENTAL BRIEF OF PLAINTIFFS-APPELLEES

BARRY K. ARRINGTON
ARRINGTON LAW FIRM
4195 WADSWORTH BOULEVARD
WHEAT RIDGE, COLORADO 80033
(303) 205-7870
E-mail: barry@arringtonpc.com
*Attorney for Plaintiffs-Appellees*

## I.   *Rahimi* Undermined the Foundation of the State's Case

The State erected its case on the foundation of its interpretation of *Bruen's* footnote nine.[1] Unfortunately for the State, that foundation crumbled in *United States v. Rahimi*, No. 22-915, 2024 WL 3074728 (U.S. 2024).

In *Bruen*, the Court struck down New York's discretionary public carry licensing law. In Footnote Nine, the Court cautioned against misinterpreting its holding to cast doubt on the constitutionality of "shall issue" licensing regimes because such laws do not suffer from the same constitutional infirmity as discretionary issue laws. Discretionary issue laws are unconstitutional because they give government officials unbridled discretion to decide whether a citizen may exercise his constitutional rights. Conversely, shall issue laws do not prevent any "responsible" law-abiding citizen who satisfies narrow objective criteria from obtaining a license. *Id*.

---

[1] *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 39, n.9 (2022) (hereinafter, "Footnote Nine").

1

The State latched onto the word "responsible" in Footnote Nine as almost the entire basis for its argument that SB23-169[2] is constitutional. The State's argument has four steps: **(1)** "*Bruen* did not call into question narrow, objective, and definite regulatory standards that ensure gun purchasers 'are, in fact, 'law-abiding, *responsible* citizens.'" Op.Br. 38 (citing Footnote Nine) (emphasis added). **(2)** "There can be no more definite and objective regulatory standard than using a minimum age limit to determine an individual's *responsibility* with a gun." Op.Br., 39 (emphasis added). **(3)** The State's expert testified that 18-to-20-year-olds are not responsible enough to be trusted to purchase firearms. Op.Br., 39-40. **(4)** Therefore, "Colorado has not abused its powers by adopting a reasonable minimum age limit to ensure gun purchases only by *responsible* adult citizens." Op.Br. 40 (emphasis added).

In summary, the State argued that under Footnote Nine, it has the power to disarm 18-to-20-year-olds because they are not "responsible." The logic of this argument was never tenable (see

---

[2] S.B. 169, 74th General Assembly, 1st Reg. Sess. (Colo. 2023), amending C.R.S. §§ 18-12-112 and 18-12-112.5.

Answer Brief, 20-22), but *Rahimi* expressly rejected it. The Court wrote:

> Finally, in holding that Section 922(g)(8) is constitutional as applied to Rahimi, we reject the Government's contention that Rahimi may be disarmed simply because he is not "responsible." "Responsible" is a vague term. It is unclear what such a rule would entail. Nor does such a line derive from our case law. In *Heller* and *Bruen*, we used the term "responsible" to describe the class of ordinary citizens who undoubtedly enjoy the Second Amendment right. But those decisions did not define the term and said nothing about the status of citizens who were not "responsible." The question was simply not presented.

*Id.*, 2024 WL 3074728, at *11 (internal citations omitted).

The State misinterpreted Footnote Nine at a basic level. *Rahimi* explained that when the Court used the term "responsible" in *Bruen* it was merely describing citizens who "undoubtedly enjoy" Second Amendment rights. *Id*. It never intended to give the government a license to disarm entire categories of citizens it deems to be not "responsible." Far from being the sort of "narrow, objective, and definite standard[]" contemplated by Footnote Nine, "responsible" is a vague term that provides no clear standard. *Id*. In summary, *Rahimi* categorically rejected the foundation on which the State built its argument that SB23-169 is constitutional.

3

## II. SB23-169 is Not Consistent With the Principles That Underpin the Nation's Regulatory Tradition

*Rahimi* wrote that the key to *Bruen's* historical inquiry "involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Id*. at *6. And the Court held that a determination of *dangerousness* underpins the regulatory tradition of disarming certain people. *Id*. at *9. The Court emphasized the fact that, "Section 922(g)(8) applies only once a court has found that the defendant 'represents a credible threat to the physical safety' of another." *Id*. The Court held that the requirement of an individualized determination made the challenged law more analogous to the Founding era surety and going armed laws "which involved judicial determinations of whether a particular defendant likely would threaten or had threatened another with a weapon." *Id*. (emphasis added).

The Court added that it was not suggesting that the Second Amendment prohibits laws banning the possession of guns by categories of persons who pose a "special danger" to society. But the concept of "dangerousness" remains key. Founding-era laws

4

disarmed two kinds of people: (1) *individuals* who had been specifically found to be dangerous; and (2) *categories of people* who presented a "special danger" to society. Thus, "[h]istory is consistent with common sense: it demonstrates that legislatures have the power to prohibit *dangerous people* from possessing guns" *Id.* at *31 (Barrett, J., concurring) (internal citation and quotation marks omitted; emphasis added).

SB23-169 is unconstitutional because it is wholly untethered from the "dangerousness" principle. The law falls into neither category identified in *Rahimi*. (1) The law does not require an *individualized* determination of dangerousness. (2) Nor does the law does apply to a *category of people* who pose a "special danger" to society. Unlike violent felons, for example, the overwhelming majority of people affected by SB23-169 have committed no crime, and there is no reason to believe that any but a small fraction of them ever will. SB23-169 does not operate against presumably dangerous people. It does just the opposite. It operates against presumably law-abiding citizens.

5

Surely the Founders would never have considered 18-to-20-year-olds to be a "special danger" to society such that they should be categorically disarmed. We know this because far from disarming 18-to-20-year-olds, the Founders *required* them to be armed. See Answer Brief, 42-44 (discussed Founding-era militia laws that required men 18 and over to acquire firearms).

In summary, *Rahimi* held two things: (1) Dangerous individuals and categories of people who pose a "special danger" may be disarmed. (2) People may not have their Second Amendment rights infringed on the ground that the government deems them to be not "responsible." The State argued extensively that SB23-169 disarms young adults on the ground that they are not responsible. In doing so, the State all but admitted that SB23-169 is unconstitutional.

## IV. *Rahimi* Vindicated Plaintiffs' "Plain Text" Argument

The State argued that Plaintiffs have the burden of introducing historical evidence demonstrating that 18-to-20-year-olds were considered to be among the "people" covered by the plain text of the Second Amendment in the Founding era. Op.Br., 26, 31.

Plaintiffs argued that the State's attempt to shift the burden of the historical inquiry onto them failed. Ans., 23-24 (citing *Lara v. Comm'r Pennsylvania State Police*, 91 F.4th 122, 130-31 (3d Cir. 2024)). They argued that under the plain text, all people have the right to keep and bear arms, though the Nation's history and tradition may be consistent with the legislature stripping some people of that right. Ans., 29, (citing *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 101-02 (3d Cir. 2023)).

The issue is whether historical evidence is relevant to: (1) the scope of the right at the plain text[3] stage; or (2) the scope of the government's power to regulate the right at the history and tradition stage. The State took the former position and Plaintiffs took the latter. Resolution of the issue is important. If the State is correct, Plaintiffs have the burden of introducing historical evidence regarding the *scope of the right* at the plain text stage. If Plaintiffs are correct, the State has the burden of introducing

---

[3] No one disputes that historical dictionaries are important to determine the plain and ordinary meaning of the words used in the text. That is not an issue in the case because the plain and ordinary meaning of the word "people" in the Founding era was never in dispute.

7

historical evidence regarding the *scope of the government's power* at the history and tradition stage. *Rahimi* unambiguously vindicated Plaintiffs' argument.

The Court reiterated *Bruen's* "plain text" and "historical tradition" framework. *Rahimi* at *6. The Court then clarified that "when the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, it bears the burden to justify its regulation." *Id.* (internal citation and quotation marks omitted). The Court ultimately held that under *Bruen's* second step, "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others [and] Section 922(g)(8) can be applied lawfully to Rahimi." *Id.* at *10.

Significantly, *Rahimi* engaged in no analysis at the plain text step. This is because it was "undisputed that the Second Amendment applies to Rahimi." *Id.* at 36. (Thomas, J., dissenting). In other words, the scope of the right at the plain text stage obviously applied to Mr. Rahimi. Even though he was a violent criminal, he was nevertheless part of the "people." Therefore, the

Court limited its discussion to the scope of the government's power to disarm people like Mr. Rahimi at the history and tradition stage.

In summary, *Rahimi* held that that the government bears the burden of justifying a law like SB23-169. Plaintiffs do not have the burden at the plain text stage of demonstrating that 18-to-20-year-olds were among the "people" in the Founding era. The plain meaning of the word "people" obviously applies to them. Rather, the State has the burden of demonstrating that its law disarming 18-to-20 year-olds is consistent with the Nation's history and tradition because as a category they pose a "special danger" to society. And it has failed to do so.

## V.     *Rahimi* Did Not Reduce the Government's Burden

Doubtless the State will argue that *Rahimi* somehow eased the government's burden under *Bruen's* analogical inquiry. But that would be a mistake. *Rahimi* reiterated *Bruen*. It did not alter it in any way. The Fifth Circuit erred in its application of *Bruen's* history and tradition test when it held the Founding-era firearm regulations advanced by the government were not sufficiently analogous to the challenged law. But that does not help the State

9

here because it did not identify any Founding-era law similar to SB23-169. In other words, in the Founding era there were *zero* laws burdening the right to bear arms of 18-to-20-year-olds as a class. Therefore, SB23-169 does not meet *Bruen's* analogical inquiry at any reasonable level of generality.

## VI.   *Rahimi* Did Not Address the 1791/1868 Issue

Finally, as in *Bruen*, there was no need for the Court to resolve the issue of whether 1791 or 1868 is the proper time for measuring the scope of the right. *Rahimi*, at *6, n.1. *In Lara,* the court held that the "Second Amendment should be understood according to its public meaning in 1791." 91 F.4th at 134. The Third Circuit's reasoning was sound, and Plaintiffs urge the Court to follow it in this regard.

Respectfully submitted,

*/s/ Barry K. Arrington*
_____

**CERTIFICATE OF SERVICE**

      The undersigned certifies that on July 16, 2024, he served a true and correct copy of the foregoing document by e-filing it with the CM/ECF system, which will serve the document on:

Michael T. Kotlarczyk
Matthew J. Worthington
Office of the Colorado Attorney General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado  80203

*/s/ Barry K. Arrington*
_____
Barry K. Arrington