23-1251

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

JARED POLIS, in his official capacity as Governor of the State of Colorado,

Defendant – Appellant,

v.

ROCKY MOUNTAIN GUN OWNERS, TATE MOSGROVE, and ADRIAN S. PINEDA,

Plaintiffs – Appellees,

On Appeal from the United States District Court, District of Colorado
The Honorable Phillip A. Brimmer
Chief District Judge

District Court Case No. 23-cv-01077-PAB-NRN

**DEFENDANT-APPELLANT'S RESPONSE TO PLAINTIFFS-APPELLEES' SUPPLEMENTAL BRIEF**

PHILIP J. WEISER
Attorney General
MICHAEL T. KOTLARCZYK *
Assistant Solicitor General
MATTHEW J. WORTHINGTON*
Assistant Attorney General

Colorado Department of Law
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: 720-508-6187
E-Mail: mike.kotlarczyk@coag.gov;
matt.worthington@coag.gov
*Counsel of Record

*Attorneys for Governor Polis*

The parties agree that *United States v. Rahimi*, 144 S. Ct. 1889 (2024), clarifies the test for Second Amendment challenges. Pltfs. Supp. Br. at 4. First, a court considers whether the plain text of the Second Amendment covers a plaintiff's conduct. *Id.* at 8. Second, if the conduct is covered, a court considers the challenged law's consistency with the "principles that underpin our regulatory tradition." *Id.* at 4 (quoting *Rahimi*, 144 S. Ct. at 1898). A court derives these principles by "examin[ing] our historical tradition of firearm regulation to help delineate the contours of the right." *Rahimi*, 144 S. Ct. at 1897 (quoting *NYSRPA v. Bruen*, 597 U.S. 1, 17 (2022)). These contours are established by "tak[ing] together" past laws to create a common principle, rather than requiring the government to show "identical … founding era regimes." *Id.* at 1901.

Applying the *Rahimi-Bruen* test here, Colorado's age-limit on gun purchases fits neatly within our Nation's regulatory tradition. History reveals a consistent principle: access to weapons by children and adolescents may be regulated to limit misuse. Plaintiffs are not likely to succeed on the merits and the preliminary injunction should be reversed.

The rest of Plaintiffs' supplemental brief advances arguments that are at odds with *Rahimi* or find no support in *Rahimi*. This brief address each issue in turn below.

## I. *Rahimi* does not "vindicate" Plaintiffs' failure to demonstrate their conduct is covered by the Second Amendment's plain text.

Plaintiffs make no argument that the text "keep and bear" in the Second Amendment covers a right to purchase guns by those under twenty-one. Instead, they ask this court to imply a right not covered by the plain text. *Rahimi* provides no support for this approach. Plaintiffs emphasize *Rahimi*'s statement that the government must justify laws regulating

1

"arms-bearing conduct." Pltfs. Supp. Br. at 8 (quoting *Rahimi*, 144 S. Ct. at 1897). But that simply means the burden shifts to the government *after* a plaintiff first shows their conduct falls within the plain text of "keep and bear." That tells us nothing about what conduct is considered "arms-bearing" under the Second Amendment.

As the Fifth Circuit recently held, "on its face, 'keep and bear' does not include purchase … an implication is not the same thing as being covered by the plain text of the amendment." *McRorey v. Garland*, 99 F.4th 831, 838 (5th Cir. 2024). Instead, this Court should look to the reasons why the Second Amendment covered Mr. Rahimi's conduct: the challenged law prohibited "possess[ing] and carry[ing] weapons[.]" *Rahimi*, 144 S. Ct. at 1907 (Gorsuch, J., concurring), at 1932 (Thomas, J., dissenting) (similar). Colorado's age-limit does not prohibit possessing or carrying weapons.[1]

The Court should also reject Plaintiffs' either-or fallacy regarding the use of history. Pltfs. Supp Br. at 7. Plaintiff suggests that the Court must either look to history at *Rahimi-Bruen*'s first step or its second step. *Id.* The State's position has always been that historical evidence is relevant to *both* steps. As plaintiffs state, a plaintiff must first introduce

---

[1] As a result, the Eighth Circuit's recent decision in *Worth v. Jacobson* has no bearing on the issues before this Court. *See Worth v. Jacobson*, No. 23-2248, 2024 WL 3419668 (8th Cir. July 16, 2024). Unlike Colorado's law, which regulates only sales, Minnesota prohibited the public carry—that is, the "bearing"—of arms by those under twenty-one. *Id.* at *1. While the Eighth Circuit misapplied *Rahimi* by requiring "overly specific analogues," *Rahimi*, 142 S. Ct. at 1925 (Barrett, J., concurring), the Eighth Circuit's focus on a "Carry Ban" makes its analysis fundamentally different from the textual and historical analysis this Court must undertake here. *See Worth*, 2024 WL 3419668, at *13 (finding 19th century state laws not analogous to Minnesota's law because they "criminalized the *sale* or *furnishing* of weapons" instead of prohibiting who "could publicly bear arms[.]")

"historical evidence regarding the *scope of the right*" and then the State may defend by "introducing historical evidence regarding the *scope of the government's power*" to regulate that right. *Id.* at 7-8. Otherwise, the State may be searching for historical regulation of a right that did not exist. History "plays two roles in the Second Amendment context … how contemporaries understood the text—for example, the meaning of the phrase 'bear Arms'" and the use of "historical gun regulations to identify the contours of the right." *Rahimi*, 144 S. Ct. 1925 (Barrett, J., concurring). Plaintiffs' argument that they carry no burden under the *Rahimi-Bruen* test is contrary to *Rahimi* and how we interpret constitutional text. *Id.* at 1910-11 (Kavanaugh, J., concurring) ("The first and most important rule in constitutional interpretation is … to interpret that text according to its ordinary meaning as originally understood."). Plaintiffs are not entitled to the extraordinary remedy of a preliminary injunction when they undisputedly failed to support that "keep and bear" covered a right to purchase guns by those under twenty-one.

## II.     *Rahimi* does not "undermine" the foundation of the State's case.

Rather than address *Rahimi*'s key holdings, Plaintiffs first erect and slay a straw man. Plaintiffs misstate that "[t]he State latched onto the word 'responsible' in Footnote Nine as almost the entire basis for its argument[.]" Pltfs. Supp. Br. at 2. Even a cursory review of the State's briefs disproves this, and Plaintiffs overemphasize the significance of *Rahimi*'s short paragraph on "responsible" citizens.

*Rahimi* rejected that an individual "may be disarmed simply because he is not 'responsible.'" 144 S. Ct. at 1903. But *Rahimi* did not suggest that the State may never regulate people who may be irresponsible with guns. Instead, *Rahimi* held that

3

"'[r]esponsible' is a vague term" and the State must use more specific criteria to regulate that is consistent with our Nation's traditions. *Id. Rahimi*, therefore, upheld prohibiting gun possession by domestic violence abusers because our "tradition of firearm regulation distinguish[ed] citizens" in that way. *Id.* at 1902. The majority was also careful to preempt any suggestion "that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse." *Id.* at 1901.

Colorado's age-limit does not draw lines based on a vague term like "responsible." It uses a sufficiently definite distinction: an individual's age. That distinction derives from our Nation's regulatory tradition where we have historically used age to distinguish gun access. The State's arguments tracked the *Rahimi-Bruen* test, and the State did not "erect[] its case" on the word "responsible." Pltfs. Supp. Br. at 1.

This Court should also reject Plaintiffs' suggestion that this paragraph of *Rahimi* somehow undermines "Footnote Nine" in *Bruen*. *Rahimi* instead clarified that *Heller*'s "presumptively lawful" regulations were limits on the Second Amendment's scope. 144 S. Ct. at 1902 (quoting *D.C. v. Heller*, 554 U.S. 570, 627 n.26 (2008)). This is consistent with *Bruen*'s Footnote Nine. If a law is presumptively lawful, a plaintiff must overcome that presumption by demonstrating "abusive ends." *Bruen*, 597 U.S. at 38 n.9. For example, the Fifth Circuit recently upheld a denial of a preliminary injunction challenging a commercial regulation on gun purchases by those under twenty-one because the plaintiffs failed to demonstrate the law had been "put toward[s] abusive ends." *McRorey*, 99 F.4th at 839 (quoting *Bruen*, 597 U.S. at 38 n.9).

4

## III. *Rahimi* did not establish a universal "dangerousness" principle required for all Second Amendment challenges.

Plaintiffs also conflate *Rahimi*'s clarified test with its specific application in *Rahimi*. Pltfs. Supp. Br. at 4-6. After announcing the clarified *Rahimi-Bruen* test for Second Amendment challenges, and "[b]earing these principles in mind[,]" the Court concluded 18 U.S.C. § 922(g)(8) was constitutional on its face. *Rahimi*, 144 S. Ct. at 1898. The Court reviewed the history of surety and affray laws, *id.* at 1899-1901, and derived the principle that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed[,]" *id.* at 1901. But the Court was clear it was not "undertak[ing] an exhaustive historical analysis of the full scope of the Second Amendment." *Id.* at 1903 (cleaned up).

Plaintiffs incorrectly state from this that "*dangerousness* underpins the regulatory tradition of disarming certain people" and laws may only regulate "(1) *individuals* who had been specifically found to be dangerous; and (2) *categories of people* who presented a 'special danger' to society." Pltfs. Supp. Br. at 4-5. The Court concluded that historical surety and affray laws support such modern regulation. But this single application of the *Rahimi-Bruen* test does not mean that no other principles may be developed from our Nation's history.

Moreover, the State presented evidence that gun access by children and adolescents presents a "special danger[.]" The State's expert submitted an unrebutted declaration that, due to neurological development, "gun-carrying among people between the ages of 18 and 20 [is] inherently riskier that it is among people who are 21 and older." App. Vol. II at 384–

5

85. The State's expert concluded that Colorado's law "will likely reduce the number of firearm homicides, nonhomicide violent crimes, suicides, and accidental firearm injuries in Colorado." *Id.* at 399. Plaintiffs chose not to present any arguments on the issue. They argue instead—without evidence—that the Founders would not have considered this group a "special danger." Pltfs. Supp. Br. at 6. But *Rahimi* directly rejected such arguments. The question is who presents a danger *today*, not in 1791, as our laws are not "trapped in amber." *Rahimi*, 144 S. Ct. at 1897.

IV. **The State is likely to succeed at *Rahimi-Bruen*'s second step.**

If this Court reaches the second step, Colorado's age-limit fits within our Nation's regulatory tradition. Plaintiffs' claim is demonstrably false when they assert that the State presented "*zero* laws" from the founding era. Pltfs. Supp. Br. at 10. Even the district court considered the State's founding era evidence, although it misapplied the test. Order at 32-40. Plaintiffs' claims also fail for more fundamental reasons.

*First*, Plaintiffs are fighting against *Rahimi* by suggesting that the State must point to a single founding-era historical twin. Pltfs. Supp. Br. at 10. The "Second Amendment permits more than just those regulations identical to ones that could be found in 1791." *Rahimi*, 144 S. Ct. at 1897-98. Instead, the Court uses history, "[t]aken together," to establish principles about the right's scope. *Id.* History presents a clear and consistent arc of regulating access to weapons by children and adolescents: from founding-era common law, early college restrictions, and 19th century sales restrictions in nearly half the United States at the time. *See* Def. Supp. Br. at 6-10. In *Rahimi*, the Court found broad common law regimes like surety and affray laws "ample evidence" of a principle, 144 S. Ct. at 1898,

6

despite "not identify[ing] a founding-era or Reconstruction-era law that specifically disarmed domestic abusers[,]" 144 S. Ct. at 1904 (Sotomayor, J., concurring). Here, the State's founding- and reconstruction-era evidence is also enough, and the State does not need to show a "founding era … total prohibition on the sale of firearms[.]" Order at 39.

*Second*, early militia laws do not help Plaintiffs' arguments. Pltfs. Supp. Br. at 6. Milita service was an obligation, not a right. App. Vol. I at 144-45. The State does not need to show adolescents *never* had access to weapons. The question is whether the State could regulate access consistent with the Second Amendment, as "founding-era legislatures [did not always] maximally exercise[] their power to regulate[.]" *Rahimi*, 144 S. Ct. at 1925 (Barrett, J., concurring). Colorado's law is also consistent with allowing gun purchases by those in the armed forces—indeed it provides this very exception. App. Vol. I at 16-17.

*Third*, nothing prevents this Court from considering 19th century state laws—laws nearly identical to Colorado's SB23-169—that prohibited guns sales to children and adolescents. App. Vol. II at 462-70. Plaintiffs can succeed only if the Court ignores our Nation's history on this specific issue and replaces it with Plaintiffs' preferred policy outcome today. Looking to history, whether from 230 or 150 years ago, "offers surer footing" than ignoring it. *Rahimi*, 144 S. Ct. at 1909 (Gorsuch, J., concurring); at 1918 (Kavanaugh, J., concurring) ("For more than two centuries … [t]he Court has repeatedly employed post-ratification history to determine the meaning of vague constitutional text."); at 1924 (Barrett, J., concurring) ("postenactment history can be an important tool" to "liquidate ambiguous constitutional provisions" or "provide persuasive evidence of the original meaning").

7

Dated: July 30, 2024

       PHILIP J. WEISER
       Attorney General

       */s/ Matthew J. Worthington*
       *Michael T. Kotlarczyk*, Assistant Solicitor General\*
       *Matthew J. Worthington*, Assistant Attorney General\*
       1300 Broadway, 6th Floor
       Denver, CO 80203
       Telephone: (720) 508-6124
       Email: mike.kotlarczyk@coag.gov;
       matt.worthington@coag.gov

       *Attorneys for Governor Jared S. Polis*

       \*Counsel of Record